The STATE OF MONTANA, ex rel., BUTTE TEAMSTERS LOCAL NO. 2, and ED KANGAS, Individually and as President of Butte Teamsters Local No. 2, Relators, v. The DISTRICT COURT of the SECOND JUDICIAL DISTRICT of the· STATE OF MONTANA, in and for the COUNTY OF SILVER BOW, and the HONORABLE JOHN B. McCLERNAN, Judge of Said Court, Respondents.

No. 10486.

Submitted August 7, 1962. Decided August 31, 1962.

374 P.2d 336.

582

Charles V. Huppe, Helena, for relators.
R. Lewis Brown, Butte, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

On August 14, 1960, following an ex parte hearing upon a petition theretofore filed, this court issued an alternative writ returnable at the hour of 2:00 P. M. on August 20, 1962. Rule IV, § 8, of the Rules of this Court, provides as follows:

"*Hearing. When Had.* Unless otherwise ordered the hearing shall be had at the time fixed for the return. At or prior to the said return time the opposing party shall serve and file, without waiver, any and all pleadings, motions and demurrers desired to be presented, including answer or return, and all issues shall be argued at the hearing, the applicant opening and closing, and the parties being allowed the same

time as upon argument of appeals. If testimony becomes necessary a reference will be ordered."

Rule IV, § 7, provides:

"*Briefs.* At or before the time set for final hearing, each party shall serve and file his brief in full conformance with Rules II, III and X, and containing a statement of the facts and of the points of law applicable, *with the authorities relied upon.*"

At the time set for hearing respondents had filed no brief as provided by Section 7, supra, nor any pleading, motion or demurrer, nor any answer or return as provided by Section 8, supra.

Counsel appeared to represent respondent and explained that he did so in accordance with the custom prevailing in the district court that counsel appearing in the cause in that court appear for and on behalf of the court upon any original proceeding filed here by virtue of such district court procedure.

Service of the alternative writ and accompanying papers was effected upon respondent court on the 14th day of August, 1962, at 5:30 P.M. Counsel represents here that although he was advised of the writ and read it and accompanying papers in the office of the clerk he was unable to get in contact with respondent, who apparently is on vacation, nor have any papers been delivered to him by respondent. While counsel orally argued and agreed to furnish a memorandum brief in twenty-four hours, we are here faced with no answer or return in response to the alternative writ.

Such writ commanded respondent to show cause before this court and none has been shown.

In such circumstances we must accept the allegations contained in the petition as true. State ex rel. Flowerree v. District Court, 71 Mont. 89, 227 P. 579.

The petition alleges that at the time of the issuance of the temporary restraining order in Cause 51816, entitled Butte, Anaconda & Pacific Railway Company, a corporation, Plain-

tiff, v. Brotherhood of Locomotive Firemen and Enginemen, a voluntary labor association; J. H. McCarvel, individually and as General Chairman of the Brotherhood of Railroad Trainmen, a voluntary labor association; R. R. McLean, individually and as General Chairman of the Brotherhood of Railroad Trainmen; Butte Teamsters Union Local No. 2, and Edwin Kangas, individually and as President of Butte Teamsters Union Local No. 2, Defendants, pending in the District Court of Silver Bow County, counsel for Butte Teamsters Union Local No. 2, and Ed Kangas made formal objection to such issuance on the ground of lack of jurisdiction of the subject matter of the case, in that it was one over which federal law vested exclusive jurisdiction in the National Labor Relations Board.

The two sections of the Taft-Hartley Act which petitioner contends are applicable here are Sections 7 and 8(b).

Section 7 provides:

*"Right of employees as to organization, collective bargaining, etc.* Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title.'' July 5, 1935, c. 372, § 7, 49 Stat. 452; June 23, 1947, 3:17 P.M., E.D.T., c. 120, Title I, § 101, 61 Stat. 140. 29 U.S.C.A. § 157.

Section 8(b), 29 U.S.C.A. § 158, provides:

''(b)   It shall be an unfair labor practice for a labor organization or its agents—   *   *   *

''(4)   (i)   to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in

an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—* * *

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * *: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;" July 5, 1935, c. 372, § 8, 49 Stat. 452; June 23, 1947, 3:17 p.m., E.D.T., c. 120, Title I, § 101, 61 Stat. 140; Oct. 22, 1951, c. 534, § 1(b), 65 Stat. 601. As amended Sept. 14, 1959, Publ.L. 86-257, Title II, § 201(e), Title VII, §§ 704(a)-(c), 705(a), 73 Stat. 525, 542, 545.

■ Under these provisions numerous United States Supreme Court decisions hold that a state court has no jurisdiction unless it be an instance of injurious conduct which the National Labor Relations Board is without express power to prevent; mass picketing, threatening of employees, obstructing streets and highways, picketing homes, or local matters such as public safety and the preservation of peace and order.

We shall refer to various decisions which point up the jurisdiction of state courts under the Taft-Hartley Act.

In Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, the court said:

"A decision of the Supreme Court of Pennsylvania has deprived petitioners of an injunction which a lower equity court of the State had granted to prohibit certain picketing by respondent labor union. The court below reviewed the national Labor Management Relations Act * * * and our applicable

decisions, and concluded: 'In our opinion such provisions for a comprehensive remedy precluded any State action by way of a different or additional remedy for the correction of the identical grievance.' The correctness of this ruling is the sole issue here. We granted certiorari.

"Petitioners were engaged in the trucking business and had twenty-four employees, four of whom were members of respondent union. The trucking operations formed a link to an interstate railroad. No controversy; labor dispute or strike was in progress, and at no time had petitioners objected to their employees joining the union. Respondents, however, placed rotating pickets, two at a time, at petitioners' loading platform. None were employees of petitioners. They carried signs reading 'Local 776 Teamsters Union (A. F. of L.) wants Employees of Central Storage & Transfer Co. to join them to gain union wages, hours and working conditions.' Picketing was orderly and peaceful, but drivers for other carriers refused to cross this picket line and, as most of petitioners' interchange of freight was with unionized concerns, their business fell off as much as 95%. The courts below found that respondents' purpose in picketing was to coerce petitioners into compelling or influencing their employees to join the union.

"The equity court held that respondents' conduct violated the Pennsylvania Labor Relations Act. The Supreme Court of the Commonwealth held, quite correctly, we think, that petitioners' grievance fell within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices. It therefore inferred that state remedies were precluded.
\* \* \* \*

"The National Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible.

"This is not an instance of injurious conduct which the Na-

tional Labor Relations Board is without express power to prevent and which therefore either is 'governable by the state or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union U. A. W., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 254, 69 S.Ct. 516, 521, 93 L.Ed. 651. Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.' Allen-Bradley Local No. 1111 United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154. Nothing suggests that the activity enjoined threatened a probable breach of the state's peace or would call for extraordinary police measures by state or city authority. Nor is there any suggestion that respondents' plea of federal jurisdiction and preemption was frivolous and dilatory, or that the federal Board would decline to exercise its powers once its jurisdiction was invoked.

''Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is

whether the State, through its courts, may adjudge the same controversy and extend its own form of relief. * * *

"On the basis of the allegations, the petitioners could have presented this grievance to the National Labor Relations Board. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."

This same principle was again expressed by the United States Supreme Court in Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151, wherein the court said:

"The issues here are whether, under the circumstances of this case, a state court may enjoin strikers and union representatives from (1) 'threatening, intimidating or coercing any of the officers, agents or employees of [the employer] at any place,' and also 'from obstructing, or attempting to obstruct the free use of the streets adjacent to [the employer's] place of business, and the free ingress and egress to and from [the employer's] property,' and (2) all 'picketing or patrolling' of the employer's premises. For reasons hereafter stated, we conclude that the state court may lawfully enjoin conduct of substantially the first category but not of the second.

"Most of the material facts are uncontroverted. In 1955, respondent, Rainfair, Inc., was a Wisconsin corporation with headquarters in Racine, Wisconsin. It owned and operated a plant in Wynne, Arkansas, an essentially rural community of about 4,000 inhabitants. About 100 women and seven men were there employed in the manufacture of men's slacks which were shipped in interstate commerce. None of the employees were members of a labor union but many had signed applications to join the Amalgamated Clothing Workers of America, CIO, which is one of the petitioners.

"Apparently in an effort to compel the employer to recognize the union as the bargaining agent of the employees, 29 of the employees did not report for work on May 2, 1955. A picket line was established on the street in front of the plant.

Strike headquarters were maintained across the street from the plant entrance. Nearly all of the strikers were women. Their number varied from 8 to 37. All was not quiet, however. On one occasion nails were strewn over the company's parking lot and, about a week later, the whole lot was 'seeded' with roofing tacks. Tacks were also scattered in the driveway of the plant manager's home and on the driveways of 12 of the nonstriking women employees. One of the pickets told the plant manager that she would 'wipe the sidewalk' with him and send him back to Wisconsin because he 'was nothing but trash.' The plant manager was followed by the strikers each time he left the plant; he also was harassed at night by occasional shouting at his home and by numerous anonymous telephone calls. * * *

"The applicable principles of law are substantially agreed upon. Respondent concedes that it is engaged in interstate commerce and that its employees are entitled to the protection of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C. § 151, 29 U.S.C.A. § 151. Respondent does not contend that the state court had power to enjoin peaceful organized activity, recognizing that generally the National Labor Relations Board has exclusive jurisdiction of such matters. Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546. Petitioners concede that the state court had the power to enjoin violence. United Automobile, Aircraft and Agricultural Implement Workers of America v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162; Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154. Respondent contends that the record here shows a pattern of violence so enmeshed in the picketing that, to restore order, it was necessary to enjoin all organized conduct. Petitioners, on the other hand, urge that there was no violence

here and no threat of it and, accordingly, that there was no factual warrant for the injunction which issued.

''The issue here is whether or not the conduct and language of the strikers were likely to cause physical violence. Petitioners urge that all of this abusive language was protected and that they could not, therefore, be enjoined from using it. We cannot agree. Words can readily be so coupled with conduct as to provoke violence. See Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571-572, 62 S.Ct. 766, 768-769, 86 L.Ed. 1031. Petitioners contend that the words used, principally 'scab' and variations thereon, are within a protected terminology. But if a sufficient number yell any word sufficiently loudly showing an intent to ridicule, insult or annoy, no matter how innocuous the dictionary definition of that word, the effect may cease to be persuasion and become intimidation and incitement to violence. Wynne is not an industrial metropolis. When, in a small community, more than 30 people get together and act as they did here, and heap abuse on their neighbors and former friends, a court is justified in finding that violence is imminent. Recognizing that the trial court was in a better position than we can be to assess the local situation, we think the evidence supports its conclusion, affirmed by the State Supreme Court, that the conduct and massed name-calling by petitioners were calculated to provoke violence and were likely to do so unless promptly restrained.

''Though the state court was within its discretionary power in enjoining future acts of violence, intimidation and threats of violence by the strikers and the union, yet it is equally clear that such court entered the pre-empted domain of the National Labor Relations Board insofar as it enjoined peaceful picketing by petitioners. The picketing proper, as contrasted with the activities around the headquarters, was peaceful. There was little, if any, conduct designed to exclude those who desired to return to work. Nor can we say that a pattern of violence was established which would inevitably reappear in the

event picketing were later resumed. Cf. Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836. What violence there was was scattered in time and much of it was unconnected with the picketing. There is nothing in the record to indicate that an injunction against such conduct would be ineffective if picketing were resumed.

"Accordingly, insofar as the injunction before us prohibits petitioners and others cooperating with them from threatening violence against, or provoking violence on the part of, any of the officers, agents or employees of respondent and prohibits them from obstructing or attempting to obstruct the free use of the streets adjacent to respondent's place of business, and the free ingress and egress to and from that property, it is affirmed. On the other hand, to the extent the injunction prohibits all other picketing and patrolling of respondent's premises and in particular prohibits peaceful picketing, it is set aside. The judgment of the Supreme Court of Arkansas is vacated and the case is remanded to it for further proceedings not inconsistent with this opinion."

Again recognizing the doctrine of jurisdiction of state courts in the maintenance of the peace, the Supreme Court of the United States in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, said:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial

relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes.

"At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of this Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board. See, e. g., Garner v. Teamsters, etc. Union, 346 U.S. 485, 74 S.Ct. 161, at pages 165-166, 98 L.Ed. 228; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546. * * *

"In the light of these principles the case before us is clear. Since the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State's jurisdiction is displaced. * * *

"It is true that we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. International Union, United Automobile, Aircraft and Agricultural Implement Workers, etc. v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L. Ed 2d 1030; United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. We have also allowed the States to enjoin such conduct. Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; United Automobile, Aircraft and Agricultural Implement Workers etc. v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162. State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of

our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in United Construction Workers etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 835, 98 L.Ed. 1025, found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, i. e., 'intimidation and threats of violence.' In the present case there is no such compelling state interest.''

■ In 1961, the Supreme Court of the United States again expressed itself upon the lack of jurisdiction of a state court over litigation arising from activities which might arguably be subject to or within the jurisdiction of the National Labor Relations Board.

In Marine Engineers Beneficial Assn. v. Interlake Steamship Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418, No. 166, October Term, 1961, that Court said:

"In San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, this Court held that the proper administration of the federal labor law requires state courts to relinquish jurisdiction not only over those controversies actually found to be within the jurisdiction of the National Labor Relations Board, but also over litigation arising from activities which might arguably be subject to that agency's cognizance. Only such a rule, the Court held, will preserve for the Labor Board its congressionally delegated function of deciding what is and what is not within its domain. In the present case the Supreme Court of Minnesota held that the petitioners, Marine Engineers Beneficial Association (MEBA) and its Local 101, were not 'labor organizations' within the meaning of § 8(b) of the Labor Management Relations Act, 29 U.S.C. § 158(b), 29 U.S.C.A. § 158(b), and therefore not subject to the unfair labor practice provisions of that section of the statute. Accordingly, the court held that a state

trial court had not erred in assuming jurisdiction over a labor dispute involving MEBA and Local 101, and in permanently enjoining them from picketing found to be in violation of state law. 260 Minn. 1, 108 N.W.2d 627. We granted certiorari, 368 U.S. 811, 82 S.Ct. 44, 7 L.Ed.2d 20, to consider an asserted conflict between the Minnesota court's decision and our holding in the Garmon case. * * *

"The Garmon case dealt with rules of conduct—whether certain activities were protected by § 7 or prohibited by § 8 of the Act. In the present case it has hardly been disputed, nor could it be, that the petitioners' conduct was of a kind arguably prohibited by § 8(b) (4) (A) of the Act and thus within the primary jurisdiction of the Board, if MEBA and Local 101 were 'labor organizations' within the contemplation of § 8(b) generally. The Minnesota courts determined, however, that those whom the petitioners represented and sought to enlist were 'supervisors,' that consequently neither of the petitioners was a 'labor organization,' and therefore that nothing in the Garmon doctrine precluded a state court from assuming jurisdiction.

It is the petitioners' contention that the issue to be determined in this case is not whether the state courts correctly decided their 'labor organization' status, but whether the state courts were free to finally decide that issue at all. The petitioners contend that the principles of the Garmon decision confined the state court to deciding only whether the evidence in this case was sufficient to show that either of them was arguably a 'labor organization' within the contemplation of § 8(b). We agree, and hold that the evidence was sufficient to deprive the Minnesota courts of jurisdiction over this controversy. * * *

"The need for protecting the exclusivity of NLRB jurisdiction is obviously greatest when the precise issue brought before a court is in the process of litigation through procedures originating in the Board. While the Board's decision is not the

last word, it must assuredly be the first. In addition, when the Board has actually undertaken to decide an issue, relitigation in a state court creates more than theoretical danger of actual conflict between state and federal regulation of the same controversy. 'Our concern' here, as it was in the Garmon case, 359 U.S., at 246, 79 S.Ct., at 780, 'is with delimiting areas * * * which must be free from state regulation if national policy is to be left unhampered.' "

Again in In re Green, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 98, the Supreme Court of the United States dealing with the jurisdiction of state courts had this to say:

"Petitioner, a member of the Ohio bar, has been held in contempt of a state court and sentenced to jail and fined. He brought this habeas corpus proceeding in the state courts challenging, *inter alia,* their jurisdiction to punish him for the conduct in question. He was denied relief by the Supreme Court of Ohio on a divided vote, 172 Ohio St. 269, 175 N.E.2d 59. We granted the petition for certiorari, 368 U.S. 894, 82 S.Ct. 171, 7 L.Ed.2d 92.

"The matter in dispute arose out of a management-labor controversy. The employer sought and obtained from the state court an injunction against picketing. Petitioner had been retained by the International Longshoreman's Association to represent the local involved in this labor dispute and when advised by the clerk of the court that a petition for an injunction had been requested, he said he would be ready anytime for a hearing. The injunction, however, was issued *ex parte.* Petitioner immediately asked for a hearing; but none was granted. At the time the *ex parte* injunction issued, the union had on file with the National Labor Relations Board an unfair labor practice charge, but no hearing had been held on it.

"Petitioner, believing that under Ohio Rev.Code, 1954, § 2727.06 the restraining order was invalid because it was issued without a hearing and that the controversy was properly one for the National Labor Relations Board and not for the state

court, advised the union officials that the restraining order was invalid and that the best way to contest it was to continue picketing and, if the pickets were held in contempt, to appeal or to test any order of commitment by habeas corpus. The union officials agreed on that course of action and the picketing continued. * * *

"* * * ` The question was whether the state court was trenching on the federal domain. The issue thus tendered emphasizes one important function that a hearing performs. It is impossible to determine from this record whether or not the dispute was exclusively within the jurisdiction of the National Labor Relations Board under the principles of San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, and Amalgamated Association of St. Elec. Ry. & Motor Coach etc. v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364. The Ohio court could not know whether it was within bounds in citing a person for contempt for violating the injunction without such a hearing. For, as Amalgamated Association of St. Elec. Ry. & Motor Coach etc. v. Wisconsin Employment Relations Board, supra, held, a state court is without power to hold one in contempt for violating an injunction that the state court had no power to enter by reason of federal pre-emption. Even if we assume that an *ex parte* order could properly issue as a matter of state law, it violates the due process requirements of the Fourteenth Amendment to convict a person of a contempt of this nature without a hearing and an opportunity to establish that the state court was acting in a field reserved exclusively by Congress for the federal agency. When an activity is 'arguably' subject to the National Board the States must defer to its 'exclusive competence,' 'if the danger of state interference with national policy is to be averted.' San Diego Building Trades Council v. Garmon, supra, 359 U.S. at 245, 79 S.Ct. at 780.''

 ██ It is thus apparent from these decisions that the jurisdiction of state courts in the field of labor relations under the

Taft-Hartley law is very limited in scope, and in general must in some manner be concerned with the maintenance of the peace or protection of property.

The allegations in the complaint in Cause 51816, so far as pertinent here, were that "the defendant Teamsters Union established picket lines on the right of way of the plaintiff, Butte, Anaconda & Pacific Railway Company, where said right of way passes through the Anselmo Yard of The Anaconda Company on Excelsior Street and at the entrance to the Butte Yard of the plaintiff, Butte, Anaconda & Pacific Railway Company, on North Wyoming Street, all in Butte, Silver Bow County, Montana; that the pickets have placards or banners containing the following legend, to-wit:

" 'B. A. & P. RAILROAD UNFAIR TO TEAMSTERS UNION LOCAL # 2' ''; that the said pickets established themselves on the plaintiff's right of way in such fashion as to require plaintiff's train to pass by them where such banners were displayed to members of plaintiff's train crews; that as a result of said picketing on plaintiff's property and right of way and the legends displayed on said banners, plaintiff's employees have refused and do refuse to operate plaintiff's trains to transport cars and property to or from the mines, plants or properties of The Anaconda Company so long as said pickets remain on the plaintiff's property and display their banners as aforesaid; * * * that the legend displayed on said banners as aforesaid is false and untruthful; that the intent and purpose of the said Teamsters Union in picketing the properties and right of way of plaintiff are to induce and coerce plaintiff not to serve The Anaconda Company, a shipper, as required by law; * * *''

Summarized, it charges picket lines on the right of way, pickets carrying placards, established on the right of way in such fashion that trains pass by and the placards are displayed to such train crews, that the legend on the placards is not true, that the purpose of picketing is to induce and coerce plain-

tiff not to serve a shipper, and that its employees refuse to pass the picket line.

Clearly, there are no allegations that concern breaches of the peace, injurious conduct, mass picketing, threatening of employees, obstruction of the right of way, violence of any kind, or threat thereof.

That the plaintiff Railroad recognized this lack of jurisdictional allegations is established by its dismissal of Cause 51816 as to the relators here and subsequent filing of Cause 51836, in which an additional allegation is contained in their complaint as to the actions of the pickets in these words:

"* * * that said pickets have established themselves on plaintiff's properties and rights of way in such fashion as to interfere with the safe operation of plaintiff's trains and to prevent ingress and egress at the plants and properties of The Anaconda Company and to hinder, obstruct and interfere with the passage of plaintiff's trains along its tracks; that, further, said pickets have harassed and intimidated plaintiff's employees while picketing on plaintiff's properties and rights of way by threats of harm and violence and by rude, threatening and intimidating gestures and insults; * * *

In our opinion the district court was acting in excess of jurisdiction when it issued the restraining order against relators in cause No. 51816.

Relators, in their supplemental application herein, allege that at the time set for hearing the order to show cause in the district court, the plaintiff Railroad dismissed the action as to relators but not as to the other defendants, such dismissal being without prejudice. Relators objected to such dismissal contending that the effect of the restraining order against the other defendants is such as to deny to relators rights assured to them under the terms of the National Labor Relations Act. The plaintiff Railroad objected to the appearance of counsel for relators on the ground they were no longer parties since the action had been dismissed as to them and no motion to inter-

vene having been filed or granted. Motion was further made by plaintiff Railroad to strike relators' objection from the record since they were no longer parties. The court ruled it had authority to dismiss the action as to relators, leaving them free of any court order. The court offered the Teamsters Union time to intervene in the cause, which offer was refused. The other defendants were present by counsel during these proceedings and requested a continuance of their hearing on the order to show cause and such request was granted.

After such dismissal and on the same day another action was commenced by the Railroad against these relators as previously referred to.

Relators contend that since the court was without jurisdiction it could not order the action dismissed as to part only of the defendants, but could only order it dismissed in its entirety.

It must be remembered that other and different counsel represent the other defendants and that such counsel was present at the time set for the hearing, as before related. Being fully aware of the events which transpired such counsel requested a continuance of the hearing which the court granted. If the suit is a class action under Rule 23(c) requiring approval of the court for dismissal such approval was surely had and since the other defendants were present they had notice.

Rule 41(a) (1), providing for voluntary dismissals, granted plaintiff Railroad the right to dismiss without prejudice.

Subsection (2) of the same rule permits the court to dismiss upon such terms and conditions as it deems proper.

We are much impressed with the reasoning of the court expressed in Broadway & Ninety-Sixth St. Rlty. Corp. v. Loew's Inc., 23 F.R.D. 9, wherein the United States District Court, (S.D. New York), said:

"Certain defendants, having settled with plaintiffs and with added defendants against whom they have served a cross-claim, move for a dismissal of the plaintiffs' complaint as against them,

a dismissal of their counterclaim against the plaintiffs and a dismissal of their cross-claim against the added defendants. There is objection on the part of remaining defendants on the ground that it is an advantage to them to have the moving defendants in the case. They say, for instance, that if the moving defendants remain as parties the objecting defendants' rights of examination and discovery will be broader and the assertion of any right of contribution that they may have against the moving defendants will be facilitated.

"There is a conflict in the cases as to the authority for dropping a party as distinguished from dismissing the entire action. The Third Circuit proceeded under Rule 41 (a) (2) F.R.Civ.P. in Young v. Wilky Carrier Corporation, 150 F.2d 764. This Circuit in Harvey Aluminum, Inc. v. American Cyanamid Co., 203 F.2d 105, 108, expressed the view that Rule 41 applied only to dismissal of the entire action and that the elimination of a single party should be accomplished under Rule 21. A later case in this Circuit, Kerr v. Compagnie De Uutramar, 250 F.2d 860, 864, indicates that Rule 21 is applicable only where there has been a technical misjoinder and that a motion to drop a party is more properly an amendment of the pleadings under Rule 15(a), which would result in a dismissal of the complaint, or (in that case) that the motion might be based solely on the inherent powers of the court to perfect federal jurisdiction.

"I refuse to believe that the court lacks power to dismiss a case as to less than all the defendants. If the power is inherent it must be exercised fairly. If it is granted by one of the above enumerated rules it is to be exercised 'when justice so requires' Rule 15(a), 'on such terms as are just' Rule 21, or 'upon such terms and conditions as the court deems proper' Rule 41(a) (2). Since the considerations applicable in all four cases are thus substantially identical it is unnecessary to decide whether I am acting under Rule 15(a), Rule 21, Rule 41(a) (2) or under none of them.

"No objecting defendant has served any cross-claim against a moving defendant.

"Doubtless the position of the objecting defendants would be more favorable with the moving defendants as co-parties with them but I can think of no reason in law or justice why the moving defendants having bought their peace from plaintiffs should be required to continue as co-parties with the objecting defendants and for their sole benefit.

"The joinder of the moving defendants by plaintiffs gave their fellow defendants no vested interest in the presence of the moving defendants as co-parties.

"The objecting defendants do not suggest that, upon dismissal, their rights as to the moving defendants will be any less than if the moving defendants had never been joined. Their joinder was a voluntary gift to their co-defendants by plaintiffs and plaintiffs, having given, could take away."

Relators in the district court sought to have the temporary restraining order vacated as to them and such relief was accomplished when the action was dismissed as to them. While a second action was thereafter filed no temporary restraining order was issued, merely an order to show cause. The other defendants sought no relief either in the district court or before this court. After relators had obtained the relief they sought they were dissatisfied because the entire action had not been dismissed as to all parties. Where counsel represent other parties in litigation it would appear that such counsel will protect the interests of their clients and seek such relief as they deem proper in the circumstances, and courts ought not to interfere with the course of action they have chosen. As the court observed in the Broadway & Ninety-Sixth St. Rlty. Corp. case, supra, there perhaps is an advantage to relators if all defendants in the action were treated the same, but as here appears from both the complaint and restraining order the issues are different in that the relator union is on strike and the other defendant unions are not on strike and the fact situ-

ations are separately stated in the complaint and different relief sought as to each group and as between relators and the other defendants the restraint set forth in the order is separately stated as to relators and the other defendants.

Because of these differences and the fact that we are here concerned only with the proceedings with regard to relators, we cannot say that the district court abused its discretion in denying relators' motion to dismiss as to the other defendants.

■ Relators seek reasonable and necessary fees for their counsel and since no return or answer has been made herein by respondents we must accept the allegations of relators as true. The affidavit of Kenneth Davis, business manager of the relator Union accompanying the petition, avers that the Union was compelled to engage the services of counsel to prosecute this Original Proceeding, and that the reasonable value of such services has been stipulated to be the sum of $1,000.

In view of our holding that the respondent court exceeded its jurisdiction in issuing the restraining order insofar as it applied to relators in Cause 51816, $1,000 attorney fees are allowed to relators, the same to be a charge against Silver Bow County.

MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.

MR. JUSTICE DOYLE did not participate in the hearing or determination of this appeal.