IN THE COURT OF APPEALS OF TENNESSEE

FILED

August 28, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

NICHOLAS HOMER FORTSON,    ) C/A NO. 03A01-9611-CV-00363
    )
    Plaintiff-Appellee,    )
    )
    )
    )
    ) APPEAL AS OF RIGHT FROM THE
v.    ) McMINN COUNTY CIRCUIT COURT
    )
    )
    )
ELIZABETH GWENDOLYN FORTSON,    )
    ) HONORABLE JOHN B. HAGLER,
    Defendant-Appellant.    ) JUDGE

For Appellant

SUZANNE MASTERS
Knoxville, Tennessee

For Appellee

H. CHRIS TREW
Higgins, Biddle, Chester &
  Trew, L.L.P.
Athens, Tennessee

O P I N I O N

AFFIRMED IN PART
REVERSED IN PART
REMANDED WITH INSTRUCTIONS    Susano, J.

In this post-divorce proceeding, the trial court denied the petition of Elizabeth Gwendolyn Fortson (Mother) for an increase in child support and other relief against her former husband, Nicholas Homer Fortson (Father). The trial court granted Father's counter-petition for contempt and sentenced Mother to seven days in jail for interfering with Father's visitation with his minor child, who was 13 years old at the time of the hearing below. Mother appealed, raising six issues which present the following questions for our review:

> 1. Did the trial court err in failing to conduct the criminal contempt proceeding against Mother as though she had been indicted for a criminal offense, thereby violating her federal and state constitutional rights?
>
> 2. Does the evidence support the trial court's finding that Mother was guilty of criminal contempt beyond a reasonable doubt?
>
> 3. Does the evidence preponderate against the trial court's finding that no material change in circumstances occurred so as to warrant an increase in child support prior to December 14, 1994?
>
> 4. Does the evidence preponderate against the trial court's denial of a judgment against Father for a medical expense arrearage owed to the minor child's psychologist?
>
> 5. Does the evidence preponderate against the trial court's denial of Mother's request for attorney's fees?
>
> 6. Is Mother entitled to attorney's fees and court costs for the prosecution of this appeal?

I

The parties were divorced in 1989. Mother was granted sole custody of the parties' minor child, Nicholas Brock Fortson (Brock)[1], with specific visitation awarded to Father.

In October, 1989, Father filed a petition for contempt, alleging that Mother had interfered with his visitation rights. Mother was found to be in contempt and was sentenced to incarceration for two days; however, that sentence was suspended "provided there [was] no future showing of disobedience of the orders of [the] court by her."

In August, 1990, Mother filed a motion addressing educational and medical expenses for the minor child. Father responded to the motion and also petitioned the court to change custody. The court denied both petitions. Father's appeal of the trial court's refusal to change custody was subsequently affirmed by this court.[2]

In the current dispute, Mother filed a petition in December, 1992, to increase child support, and also requested that the court find Father in contempt for his refusal to pay a certain medical bill for Brock's psychological counseling. Father filed a counter-petition asking the court to hold his former wife in contempt for again interfering with his visitation rights. Among other things, Father's petition alleged that

---

[1]The child's date of birth is May 7, 1980.

[2]*See **Fortson v. Fortson***, C/A No. 03A01-9104-CV-00123, 1991 WL 170567 (Court of Appeals at Knoxville, September 6, 1991).

Mother had denied him Christmas visitation in 1992.  On October 18, 1993, the trial court heard proof on the parties' petitions. At the conclusion of all the proof, the court took the matter under advisement and reviewed the entire record in this case, including the record of the earlier proceedings.  Some 19 months later, the trial court issued a memorandum opinion denying Mother's petition for an increase in child support and holding her in contempt for interfering with Father's visitation rights. It sentenced her to serve the original two days of incarceration that previously had been suspended, as well as five additional days in jail.  The trial court subsequently amended its judgment to provide for an increase in child support from $450 a month to $668 per month, retroactive to December 14, 1994.  Mother's appeal followed.

II

Mother's first two issues address the trial court's finding that she was guilty of contempt for interfering with Father's visitation.  Mother contends that since the trial court held her in *criminal* -- rather than civil -- contempt[3], she was entitled to various procedural safeguards, e.g., notice of the charges, the opportunity to put on witnesses, the right to require proof beyond a reasonable doubt, and the right against self-incrimination.  She argues that she was not afforded these protections, that, consequently, her federal and state constitutional rights were violated, and that her conviction

_____

[3]Mr. Fortson concedes, and we agree, that the contempt proceedings against Ms. Fortson were criminal in nature.

4

should therefore be reversed.  She also contends that the evidence does not support a finding that she was guilty of contempt beyond a reasonable doubt.

Determinations regarding contempt lie within the court's sound discretion and are final, absent any plain abuse of that discretion.  *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Robinson v. Air Draulics Engineering Co.*, 377 S.W.2d 908, 912 (Tenn. 1964); *Sherrod v. Wix*, 849 S.W.2d 780, 786 (Tenn.App. 1992).  Criminal contempt proceedings are governed by Rule 42(b) of the Tennessee Rules of Criminal Procedure, which provides, in pertinent part:

> A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice.  The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such....

Rule 42(b), Tenn.R.Crim.P.[4]  Tennessee courts have overturned criminal contempt convictions where proper notice was not given. *See, e.g., Storey v. Storey*, 835 S.W.2d 593, 599-600 (Tenn.App. 1992).  Thus, it is well-established that a defendant may be punished for indirect criminal contempt only after he or she has been given notice and the opportunity to respond to the charges. *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978)(citing *Johnson*

---

[4]Such notice is not required in cases of *direct* criminal contempt, *i.e.,* where the conduct constituting the contempt occurs "in the actual presence of the court" and is witnessed by the judge.  Rule 42(a), Tenn.R.Crim.P.  In the instant case, the alleged contempt was *indirect*, in that it occurred outside of the presence of the court.

*v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925)).

In addition to notice and a hearing, a defendant in a criminal contempt proceeding is entitled to other constitutional protections, including the presumption of innocence, the right to require proof of guilt beyond a reasonable doubt, and the right against self-incrimination. *Gompers v. Buck's Stove and Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911); *Storey*, 835 S.W.2d at 599. In short, the contempt proceeding "must be tried as if the party were under indictment." *Kornik v. Kornik*, 3 Tenn.Civ.App. (Higgins) 41, 44 (1913). Accordingly, the accused must be allowed a "chance to testify and call other witnesses in his behalf, either by way of defense or by explanation." *In re Green's Petition*, 369 U.S. 689, 82 S.Ct. 1114, 1116, 8 L.Ed.2d 198 (1962); *see also Robinson*, 377 S.W.2d at 913 ("the freest opportunity should always be given [the accused] to produce his defense.").

III

On the notice issue, Father's counter-petition set forth his allegations of criminal contempt. He charged that Mother had interfered with his visitation *in the past*. He prayed that she be held in contempt "for violating his visitation privileges," and specifically

6

> [t]hat the Court punish [Mother] by having
> her serve the two (2) days in the McMinn
> County Jail as required by the [earlier]
> Judgment, and [that the Court] provide
> further punishment for her other violations
> of the Orders in this case.

It is clear that Father was not seeking his former wife's incarceration regarding a transgression which was within her ability to rectify. He asked that she be jailed for past conduct which had produced a result, i.e., missed visitation, that could not be undone. The counter-petition clearly put Mother on notice that she was charged with criminal contempt.

Mother also argues that she was required to put on her proof before Father offered his proof, thus violating her right to require proof beyond a reasonable doubt and her right against self-incrimination. Mother mischaracterizes what happened below.

Both of the parties in this case were seeking affirmative relief. Mother filed her petition first and was the first to call her witnesses. After putting on proof with respect to her various requests for relief, counsel for Mother engaged the court in the following colloquy:

> MS. LEE: Ms. Fortson -- Your Honor, in the
> countersuit filed regarding visitation would
> it be all right if I went ahead and got into
> that here or do you want to hear from him?
>
> THE COURT: No, I think you ought to go into
> everything that both offensively and
> defensively and Mr. Trew do the same.

7

We find that Mother sought the permission of the court to proceed in the manner now being criticized by her. If the procedure utilized by the trial court was in error, Mother is partially responsible for that error and will not be heard to complain now. Rule 36(b), T.R.A.P.

Mother argues that she was precluded from calling some witnesses she had available to testify regarding her alleged interference with Father's visitation. The record does not reflect that the trial court refused to hear Mother's witnesses.

After the parties had testified, the following exchange took place among counsel and the court:

> THE COURT: What other witnesses do you all have and what are they?
>
> MS. LEE: I have Cliff Willard, Your Honor, who is an expert in dealing with children with learning disabilities and will testify as to Brock Fortson's learning disability and as to what he needs in terms of adaptive material.
>
> He is a specialist in this area dealing with learning disabled children and is in fact is a learning disability person himself and has personal experience in this area.
>
> I also have a witness, two witnesses as to the events that transpired on December 18, regarding this Christmas visitation. I don't know whether the Court needs additional testimony on that issue or not, but we have that available.
>
> THE COURT: I think you have a witness on that December 18 visit?
>
> MR. TREW: Yes, if the Court wants to hear --
>
> THE COURT: I think I want to just hear Mr. Willard since he's here to testify. Let's try to keep it brief.

At no time were the witnesses in question called by Mother to testify. At no time did the court refuse to let the witnesses testify. The record simply does not support Mother's contention that the court refused to let her witnesses testify.

Mother also complains that the court reviewed the entire court file, as it pertained to the earlier proceedings between these parties, in making its decision in this case. We find nothing wrong with this. A trial court may take judicial notice in a post-divorce proceeding of earlier proceedings between the same parties in the same divorce case. *See* Rule 201(b)(2), Tenn.R.Evid. ("A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known . . . or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *see also* **Mandela v. Reynolds**, C/A No. 01A01-9303-CH-00126, 1993 WL 236607 at *2-3 (Tenn.App., M.S., filed June 30, 1993, Todd, J.) (records of prior proceedings between the same parties in the same case are subject to judicial notice since they constitute unquestionably accurate sources under Rule 201(b)(2), Tenn.R.Evid.). This was particularly necessary in this case since Father was asking that Mother serve the two days of incarceration that had earlier been suspended. Mother's argument is without merit.

As her last argument on the criminal contempt issue, Mother complains that her guilt was not shown beyond a reasonable doubt. Again, we disagree.

9

On this particular point, it is important to note the trial court's explicit finding regarding Mother's credibility:

> In all matters relating to custody and
> visitation, this Court, both from the record
> and from observing her demeanor in Court,
> cannot accredit any testimony by mother.

"[O]n an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." ***Tennessee Valley Kaolin v. Perry***, 526 S.W.2d 488, 490 (Tenn.App. 1974).

There was an abundance of evidence that Mother denied Father his visitation rights. The trial court found as follows:

> The purpose here then is to show a now clear
> pattern of conduct and lies by a troubled and
> disturbed parent designed to prevent a normal
> relationship between the child and the other
> parent.
>
> *       *       *
>
> Typical of the manner in which she has
> interfered with visitation, she offered the
> father visitation dates for Christmas, 1992,
> which he accepted. She then reneged by
> "correspondence" which he never received,
> eventually requiring the intervention of
> attorneys for last-minute scheduling of
> Christmas vacation. Moreover, this is the
> first time the Court has even seen a laudable
> activity like the Boy Scouts used to impede a
> parent/child relationship.

Our review of the record convinces us that Mother intentionally set out to interfere with Father's visitation. We find in the record proof of this beyond a reasonable doubt.

10

We have reviewed all of Mother's arguments supporting her contention that the trial court's criminal contempt decree should be vacated. We find that all of her arguments are without merit.

IV

Mother next argues that the trial court erred in failing to make the increase in child support decreed by the court retroactive to the date of filing of her petition seeking an increase. We disagree.

The trial court initially refused to grant Mother any increase in child support. In its memorandum opinion of October 18, 1993, the court noted that there had been no showing of a material change of circumstances, stating that

> [Mother] has proven only that the father's income has increased and that her own financial needs, as opposed to those of her son, have increased, primarily because of her inability to remain employed.

After obtaining new counsel, Mother timely filed a "Motion for New Trial/Motion to Modify Judgment" in which she argued that there had been a "significant variance" between the child support previously being paid by Father and the amount due under the Guidelines, given Father's present level of income. *See* T.C.A. § 36-5-101(a)(1); *see also* Tenn.Comp.R. & Regs., ch. 1240-2-4-.02(3). She also argued that even prior to the advent of the "significant variance" test, which was effective December 14,

11

1994, she was entitled to an increase in child support based upon the old test, which required a showing of a material change of circumstances. Accordingly, she sought an increase in support from $450 per month to $668 per month, retroactive to the date of filing of her petition.

The trial court, after hearing argument on Mother's motion, ruled that Mother was entitled to the requested increase in support, but only retroactive to December 14, 1994. In doing so, the trial court opined that it was only decreeing such an increase because it felt that such an increase was mandated by the new "significant variance" test. The court adhered to its original decision that there was no basis for awarding an increase in child support prior to the effective date of the adoption of the new test.

We do not find that the evidence preponderates against the trial court's determination that Mother had failed to show a material change of circumstances warranting an increase in child support prior to December 14, 1994. In this case, there was evidence that Mother's financial situation was severely impacted by the fact that she was no longer employed full-time. She claimed that she needed additional support in order to purchase a computer for her son, who suffers from a learning disability; but the evidence was clear that he had access to a computer at school; that he had been permitted, on occasions, to take it home; and that he was being served by specialists at school for his learning disability.

12

Applying the standard set forth in Rule 13(d), T.R.A.P., we cannot say that the evidence preponderates against the trial court's child support decree. We find no abuse of discretion.

V

Mother contends that the trial court should have awarded her a judgment for a bill owed to one of the minor child's psychologists, Dr. Terry Molnar. The simple answer to this issue is that Mother did not seek a money judgment. Her prayer for relief on this matter asked only that Father "be held in contempt for his willful refusal to pay the counseling bill as set forth herein."

In denying Mother's request for relief as to Dr. Molnar's bill, the trial court noted that she had taken the child to Dr. Molnar, only after "remov[ing] [him] from the psychologist who, by background, training and experience, was best able to assist the parties' son."

We find no error in the trial court's refusal to award Mother any relief pertaining to Dr. Molnar's bill. In effect, the trial court found that it was not reasonable and necessary. We cannot say that the evidence preponderates against this finding. There was evidence that despite his learning disability, the parties' child had been on the honor roll for the last two years and was one rank from being a Eagle scout. The evidence supports a finding that this is a fine young man who

13

needs less psychological help, and more support from his mother in developing a relationship with his father.

Mother's issue with respect to Dr. Molnar's bill is without merit.

VI

In her next issue, Mother argues that the trial court erred in refusing to award her attorney fees, citing her success in securing an increase in child support. The issue of attorney fees addresses itself to the sound discretion of the trial court, and an appellate court will not interfere absent a showing of an abuse of that discretion. *Elliot v. Elliot*, 825 S.W.2d 87, 92 (Tenn.App. 1991); *Threadgill v. Threadgill*, 740 S.W.2d 419, 426 (Tenn.App. 1987). In this case, Wife was partially successful in her efforts on behalf of her minor child. Therefore, we find that she is entitled to an award of attorney's fees, but only to the extent her attorney's charges and expenses are related to the increase in child support decreed by the court. This case will be remanded to the trial court for a hearing to determine the fees and expenses to which Mother is entitled. *See Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962). The trial court's holding that she is not entitled to an award of attorney's fees and costs is reversed.

VII

14

Finally, Mother seeks fees and costs incurred in connection with this appeal. Since the vast majority of the issues on this appeal have been found adverse to her, she is not entitled to such fees and costs.

The trial court's judgment denying Mother any attorney fees and expenses at the trial level is reversed. In all other respects, the judgment of the trial court is affirmed. Costs on appeal are taxed against the appellant and her surety. This case is remanded to the trial court for a hearing on the issue of attorney's fees and expenses. In all other respects, this case is remanded for enforcement of the trial court's judgment and collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.

15