In the Matter of ALPHONSE A. AMATO.
THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. "JOHN DOE" et al., Defendants.

Supreme Court, Extraordinary Special and Trial Term, Richmond County, April 21, 1953.

*Nathaniel L. Goldstein, Attorney-General (William B. Herlands, Special Assistant Attorney-General, Jack Imberman* and *Benjamin R. Kaplan* of counsel), for plaintiff.

*Jerome O. Ellis* for Alphonse A. Amato.

BENVENGA, J. This is a motion to direct a witness to answer legal and proper interrogatories.

In December, 1952, and in January, 1953, the witness Amato was adjudged guilty of contempt of court, pursuant to section 750 of the Judiciary Law, for his contumacious and willful refusal to answer legal and proper interrogatories put to him before the Extraordinary Grand Jury. On each occasion, his refusal persisted after he had been directed by the court to answer the questions. On each occasion, he was sentenced to serve thirty days in jail and pay a fine of $250.

On April 9, 1953, after Amato had served the sentences imposed, he again appeared before the Extraordinary Grand Jury pursuant to a subpœna duly served upon him. Upon his refusal to answer questions, he was brought before the court. He takes the position that the questions propounded are the same questions or questions similar to those previously put to him, and that since his refusal to answer such questions has already resulted in commitments for contempt and in the filing of informations in the Court of Special Sessions charging the misdemeanor of contempt of court, he cannot be compelled to answer the same questions, and cannot again be punished for his refusal to answer such questions.

(1) The principle is well established that separate and distinct acts of contumacious and willful refusal to answer legal

and proper interrogatories is a separate and distinct act of criminal contempt, even though the witness may already have been punished for his refusal to answer the same or substantially the same questions. It is equally well settled that if a series of acts constitutes but one contempt, there cannot be separate and distinct punishments for each act in the series. In other words, the court cannot multiply contempts by repeating and multiplying questions and directions on the same day or on the same occasion (*Matter of Ward,* 295 Mich. 742, 747; *State* v. *Kasherman,* 177 Minn. 200, 202, certiorari denied 280 U. S. 602; *Ex parte Stice,* 70 Cal. 51, 58; *Williams* v. *Davis,* 27 Cal. 2d 746, 751; *Maxwell* v. *Rives,* 11 Nev. 213, 222, 17 C. J. S., Contempt, § 100, p. 144; to the same effect, see *United States* v. *Costello,* 198 F. 2d 200, certiorari denied 344 U. S. 874, 900).

The test for determining whether contumacious acts constitute separate and distinct contempts is not whether there has been a previous adjudication for contempt, but " whether the subsequent contumacious act is so interwoven with the previous conduct that it is inseparable therefrom " (*Gautreaux* v. *Gautreaux,* 220 La. 564, 579).

In this connection, it is to be noted that the doctrine of former jeopardy does not apply to civil proceedings to punish a witness for criminal contempt, nor is the doctrine violated by successive commitments to punish a witness for persistent and successive refusals to answer legal and proper interrogatories; for the object and purpose of such proceedings is not only to vindicate and preserve the power, integrity and dignity of the courts, but also to compel the performance of some order or decree of the court which it is within the power of the witness to perform, or to perform a public duty which the witness is bound to perform (*State* v. *Kasherman, supra; People ex rel. Sherwin* v. *Mead,* 92 N. Y. 415, 420; *Matter of Hanbury,* 160 App. Div. 662, 665; 17 C. J. S., Contempt, § 91, p. 133; 22 C. J. S., Criminal Law, § 240, p. 372).

Of course, as the court observed in *Commonwealth* v. *Hudson* (315 Mass. 335, 347) " the fear of such punishment, like the fear of punishment for crime in general, may have a coercive effect. It may induce compliance with the decree. Where the duty to perform the decree continues, and performance remains possible, it is hard to see why repeated penalties may not be imposed for failure to obey during successive periods of time ".

(2) These principles were applied in the *Ward* case (*supra*). In that case, and in the companion cases of *Matter of Schnitzer*

(295 Mich. 736) and *Matter of Cohen* (295 Mich. 748) witnesses were called before a grand jury conducting an investigation into the existence of gambling and possible protection by county officials, including any failure to enforce the criminal laws. While the witnesses were being interrogated before a State grand jury, a Federal grand jury was inquiring into matters pertaining to possible violations of the Federal statutes, including the Federal income tax laws. Having asserted their privilege against self incrimination, the witnesses were granted immunity from State prosecution. Some of the witnesses were interrogated about their connection with the collection of moneys for the protection of gambling houses. All of the witnesses persisted in their refusal to testify, claiming that they were in danger of Federal prosecution for income tax violations. On the authority of *Matter of Doyle* (257 N. Y. 244) and other cases cited in the opinion of this court in *Matter of Herlands* (*Carchietta*) (204 Misc. 373) the witnesses were adjudged guilty of contempt, the court holding that the answers to the questions propounded had no tendency to incriminate the witnesses under the Federal laws, and that the privilege was recalcitrantly asserted too soon.

In the *Ward* case, the court considered the question of successive punishments for successive contempts. In that case, the witness was taken before the grand jury after he had served a prior sentence for contempt. He was asked substantially to answer the same questions that had previously been propounded to him and he again refused to answer. Citing the leading *Kasherman* and *Stice* cases (*supra*), the court held that the second commitment violated none of the witness's constitutional rights and privileges; that '' each succeeding refusal to answer the *same* question is a *new* contempt '', for which a separate and distinct punishment may be imposed (see 295 Mich. 746–747).

The *Amarante* case (*People ex rel. Amarante* v. *McDonnell*, 100 N. Y. S. 2d 463; *People* v. *Amarante,* 100 N. Y. S. 2d 677) upon which Amato principally relies, is plainly distinguishable. There, the witness on the same day and at the same session of the court refused to answer seven questions, all concerning the same topic. It was properly held, in accordance with the line of cases already cited, that such refusals constituted but one contempt and not seven separate and distinct acts of contempt. Here, if the witness persists in his refusal to testify, the contumacious act, as in the *Ward* and other cases (cited

*supra*), is a separate and distinct contempt of court and punishable as such.

(3) It is also contended that since the witness is presently facing criminal prosecutions on two informations for the misdemeanor of criminal contempt (Penal Law, §§ 600–602; *People ex rel. Frank* v. *McCann*, 253 N. Y. 221, affg. 227 App. Div. 57), arising out of his earlier refusal to answer, he is facing a real and present danger of another criminal prosecution and, therefore, cannot be compelled to answer the questions or be a witness against himself. The contention is without merit.

In the first place, a civil proceeding to punish for criminal contempt and a criminal prosecution for the misdemeanor of criminal contempt are " wholly independent of each other." The law contemplates that " both remedies, or either may be pursued " (*People ex rel. Sherwin* v. *Mead,* 92 N. Y. 415, 420, *supra;* 22 C. J. S., Criminal Law, § 293, p. 442). Obviously, if the contentions were upheld, it would be within the power of a witness to pervert and obstruct justice and the due administration of the laws by the simple process of refusing to testify and rendering himself liable to a comparatively light sentence, thus saving from criminal prosecution persons guilty of the most serious offenses against the administration of justice. It would also place it within the power of those against whom an inquiry or investigation was being directed, by means of bribery or other secret agreement, to aid and abet the witness in his refusal to answer and thus obtain immunity from prosecution. The law is not so impotent.

(4) For more than three centuries, it has been a fundamental maxim of the common law that the public " has a right to every man's evidence ", unless he is specially exempted and protected by law. It is a duty which demands the restriction, and not the expansion, of special privileges and exemptions. Moreover, it is a duty not to be grudged or evaded (8 Wigmore on Evidence [3d ed.], § 2192; *Matter of Doyle,* 257 N. Y. 244, 275, *supra*). However onerous, embarrassing or even distasteful, the duty is " necessary to the administration of justice according to the forms and modes established in our system of government." It is a duty which must be performed (*Blair* v. *United States,* 250 U. S. 273, 281; *State* v. *Kasherman, supra,* p. 202).

Here, the statute grants the witness full and complete immunity from prosecution for or on account of any transaction, matter or thing concerning which he may testify (Penal Law, §§ 381, 584, 996). Although the immunity so granted does not

afford immunity from prosecution in jurisdictions other than New York, nevertheless, if the questions propounded to the witness have any tendency to elicit answers which might subject him to criminal prosecutions in other jurisdictions, it is the duty of the court, as indicated in the *Carchietta* opinion, to uphold him in his refusal to answer. Otherwise, it is the duty of the court to compel him to answer. To this end, the court should and will use every appropriate and necessary coercive measure. The matter is entirely in the hands of the witness.

The witness is accordingly directed to answer any and all questions concerning '' any and all acts  *  *  * committed or omitted, in the County of Richmond, in violation of any provisions of law relating to gambling, bribery and corruption '', as well as any other crimes specified in the executive order directing the present inquiry.