## IN RE GREEN.

No. 312.   Argued April 9, 1962.—Decided May 21, 1962.

*Merritt W. Green* argued the cause for petitioner. With him on the briefs was *Fred A. Smith.*

*Ben Neidlinger* argued the cause for respondent.   With him on the briefs was *Harry Friberg.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner, a member of the Ohio bar, has been held in contempt of a state court and sentenced to jail and fined.   He brought this habeas corpus proceeding in the state courts challenging, *inter alia,* their jurisdiction to

punish him for the conduct in question. He was denied relief by the Supreme Court of Ohio on a divided vote, 172 Ohio St. 269, 175 N. E. 2d 59. We granted the petition for certiorari, 368 U. S. 894.

The matter in dispute arose out of a management-labor controversy. The employer sought and obtained from the state court an injunction against picketing. Petitioner had been retained by the International Longshoremen's Association to represent the local involved in this labor dispute and when advised by the clerk of the court that a petition for an injunction had been requested, he said he would be ready any time for a hearing. The injunction, however, was issued *ex parte*. Petitioner immediately asked for a hearing; but none was granted. At the time the *ex parte* injunction issued, the union had on file with the National Labor Relations Board an unfair labor practice charge, but no hearing had been held on it.

Petitioner, believing that under Ohio Rev. Code, 1954, § 2727.06 the restraining order was invalid because it was issued without a hearing and that the controversy was properly one for the National Labor Relations Board and not for the state court, advised the union officials that the restraining order was invalid and that the best way to contest it was to continue picketing and, if the pickets were held in contempt, to appeal or to test any order of commitment by habeas corpus. The union officials agreed on that course of action and the picketing continued.

Petitioner again sought to obtain a hearing on his motion to vacate the restraining order. But the judge said none could be had for a week. Thereupon petitioner and opposing counsel agreed to submit four pickets for a contempt hearing and to stipulate the facts.

He produced the four pickets the following day and the judge held them in contempt, giving them two days to purge themselves. At the end of the two days another hearing was held; the pickets did not purge themselves.

Petitioner made clear at this hearing and at the earlier one that it was he who had advised the union to test the injunction by risking contempt. The judge held him in contempt for disobeying or resisting "a lawful writ, process, order, rule, judgment, or command" of the court. Ohio Rev. Code, 1954, § 2705.02. While an opportunity was given petitioner to be heard, petitioner was not allowed to testify on his own behalf, the judge ruling that the only purpose of the hearing was to sentence petitioner.

There was a hearing in the Ohio Court of Appeals when a petition for habeas corpus was filed; and at that hearing the undisputed facts showed that the employer was engaged in interstate commerce, that when the contempt order was issued an unfair labor practice charge involving the same dispute as the picketing was pending before the National Labor Relations Board, and that the picketing which had been enjoined was peaceful picketing.

Respondent argues that the controversy between the employer and the union involved no attempt to organize workers and no refusal of the employer to bargain but only the enforcement of a "no-strike" clause in a collective bargaining agreement which was left by Congress either to federal courts (*Textile Workers Union* v. *Lincoln Mills,* 353 U. S. 448) or to state courts. *Teamsters Local* v. *Lucas Flour Co.,* 369 U. S. 95.

Petitioner, however, argues that the unfair labor practice charge filed with the National Labor Relations Board was based on the refusal of the employer to bargain in good faith and that the collective bargaining agreement which the employer asked the state court to enforce had been signed by unauthorized agents.

We said in *In re Oliver,* 333 U. S. 257, 275, that procedural due process "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented

by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."

Petitioner was guilty of no misconduct that fell within the category of acts which constitute contempt in open court, where immediate punishment is necessary to prevent "demoralization of the court's authority" (*id.*, at 275) or the other types of contempt considered in *Brown* v. *United States,* 359 U. S. 41. The question was whether the state court was trenching on the federal domain. The issue thus tendered emphasizes one important function that a hearing performs. It is impossible to determine from this record whether or not the dispute was exclusively within the jurisdiction of the National Labor Relations Board under the principles of *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, and *Amalgamated Association* v. *Wisconsin Employment Relations Board,* 340 U. S. 383. The Ohio court could not know whether it was within bounds in citing a person for contempt for violating the injunction without such a hearing. For, as *Amalgamated Association* v. *Wisconsin Employment Relations Board, supra,* held, a state court is without power to hold one in contempt [1] for violating an injunction that the state court had no power to enter by reason of federal pre-emption. Even if we assume that an *ex parte* order could properly issue as a matter of state

---

[1] One of the companion cases in *Amalgamated Association* v. *Wisconsin Employment Relations Board, supra,* was No. 438, *United Gas Workers* v. *Wisconsin Employment Relations Board,* in which a conviction for contempt for not obeying a restraining order issued by the state court (258 Wis. 1, 44 N. W. 2d 547) was reversed. 340 U. S. 383, 386, 399. The opinion was written by Chief Justice Vinson who also wrote the opinion in *United States* v. *United Mine Workers,* 330 U. S. 258. The latter case involved a restraining order of a federal court and presented no question of pre-emption of a field by Congress where, if the federal policy is to prevail, federal power must be complete.

law, it violates the due process requirements of the Fourteenth Amendment [2] to convict a person of a contempt of this nature without a hearing and an opportunity to establish that the state court was acting in a field reserved exclusively by Congress for the federal agency. When an activity is "arguably" subject to the National Board the States must defer to its "exclusive competence," "if the danger of state interference with national policy is to be averted." *San Diego Building Trades Council* v. *Garmon, supra,* at 245.

*Reversed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, whom MR. JUSTICE CLARK joins, dissenting in part and concurring in part.

I agree that this contempt conviction must be set aside, but not for the reasons given by the Court.

In *United States* v. *United Mine Workers,* 330 U. S. 258, 289–295, this Court held that disobedience of a temporary restraining order issued by a court whose claim to jurisdiction over the underlying proceeding is not frivolous may be punished as criminal contempt even if it is determined on appeal that such jurisdiction was lacking. This holding was not new, *United States* v. *Shipp,* 203 U. S. 563; *Howat* v. *Kansas,* 258 U. S. 181, and it has not been departed from since. It is the law of Ohio, *Ohio Contractors Assn.* v. *Local 894, Hod Carriers' Union,* 108 Ohio App. 395, 162 N. E. 2d 155. It was one ground of decision below, 172 Ohio St. 269, 274–275, 175 N. E. 2d 59, 62–63, and is relied on here by respondent. However, the Court in its opinion gives only a passing glance at the *Mine Workers* decision.

[2] Cf. *Ex parte Bradley,* 7 Wall. 364, 375; *Hovey* v. *Elliott,* 167 U. S. 409.

The injunction petition out of which this contempt proceeding arose alleged that the posting of union pickets "and the calling of a strike by so doing" violated the no-strike clause of a collective bargaining agreement signed by union representatives who claimed authority to contract. The assertion of state court jurisdiction to redress violation of such an agreement has recently been upheld in *Charles Dowd Box Co.* v. *Courtney,* 368 U. S. 502, and can hardly be deemed to have been frivolous before that decision. It does not become frivolous because an argument might be made for holding the state court powerless to issue an injunction in such a case, see *Dowd Box, supra,* 368 U. S., at 514, n. 8, or because it is arguable either that no contract was concluded in this case or that the picketing did not constitute a breach of such a contract. *Local 174, Teamsters Union* v. *Lucas Flour Co.,* 369 U. S. 95, 101, makes clear that the rule stated in *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 245, ousting state courts from dealing in tort with activities even arguably subject to § 7 or § 8 of the National Labor Relations Act, does not apply when relief is sought for breach of an alleged collective bargaining agreement. State jurisdiction was upheld in *Lucas Flour,* although the activity there would have been protected by § 7 if not forbidden by a contract provision whose interpretation was fairly disputed, and thus was still arguably protected.

Accordingly, unless *Mine Workers* is distinguishable, the state court in this instance had power to punish petitioner for contempt even though it may ultimately be determined that it lacked jurisdiction over the injunction suit itself. The Court seeks to find such a distinction in the fact that *Mine Workers* involved a federal restraining order, whereas in *Amalgamated Assn. of Bus Employees* v. *Wisconsin Employment Relations Board,* 340 U. S. 383, where state jurisdiction was found to be

preempted by the National Labor Relations Act, a state court restraining order *pendente lite* was set aside. The *Amalgamated* case, however, did not involve an alleged breach of a labor agreement. The *Mine Workers* principle was neither relied on by the state court in *Bus Employees* nor argued here, and there is nothing in this Court's opinion in that case which suggests that the State would have been without power to reinstate the original contempt order on the basis of *Mine Workers* if that rule were followed in Wisconsin. Moreover, the Court's opinion in the present case does not enlighten us as to why the *Mine Workers* principle should not obtain in a "preemption" case. Indeed, I would have supposed that if a federal court can preserve the status quo pending resolution of a disputed question as to its jurisdiction, the considerations in favor of allowing a state court to take such action in the same situation are at least as strong, if not stronger.

It is suggested that the federal policy behind preemption of state jurisdiction in Labor Board cases would be frustrated if the *Mine Workers* rule were to be considered applicable in a case such as this. But the policy underlying the preemption doctrine cannot well be thought stronger than the policy of the Norris-LaGuardia Act. The restraining order was issued in *Mine Workers* despite the commands of the Norris-LaGuardia Act—a statute specifically directed towards proscribing the issuance of injunctive orders in labor disputes.*

---

*The very argument now advanced here by the majority opinion was made by Mr. Justice Murphy, dissenting, in the *Mine Workers* case (330 U. S., at 341): "But we are acting here in the unique field of labor relations, dealing with a type of order which Congress has definitely proscribed. If we are to hold these defendants in contempt for having violated a void restraining order, we must close our eyes to the expressed will of Congress and to the whole history of equitable

Petitioner's argument that the restraining order must be ancillary to a dispute over which the court has admitted jurisdiction scarcely serves to explain either *United States* v. *Shipp, supra,* in which the Court assumed that jurisdiction of the entire controversy depended on whether the Constitution had been violated, or *Howat* v. *Kansas, supra,* in which the jurisdiction of the state court, apart from the validity of the statute attacked, was relied on only as an alternative holding. Whether a restraining order is thus ancillary or not, respect for the orderly process of law requires obedience to it until a debatable issue of jurisdiction can be authoritatively decided. *United States* v. *United Mine Workers, supra,* 330 U. S., at 309–310 (FRANKFURTER, J., concurring). Petitioner would limit the rule to injunctive orders issued to preserve the status quo. Even so, the power of the court to act pending decision of the jurisdictional issue surely does not depend upon whether a strike has begun an hour before the complaint is filed or is to begin an hour later.

Nevertheless, I agree that for a different reason petitioner's conviction did not comport with the requirements of due process. For the record shows that the petitioner was deprived of an opportunity to prove that contempt proceedings against the pickets were agreed to among himself, his adversary, and the judge as the appropriate way to test the court's jurisdiction over the basic lawsuit. Petitioner offered to testify—and his proffered testimony appears not to have been disputed—that "I was convinced that both the Judge and Mr. Ragan [opposing counsel] were aware that I had consented to bring these men before the court and stipulate the essential matters

restraints in the field of labor disputes. We must disregard the fact that to compel one to obey a void restraining order in a case involving a labor dispute and to require that it be tested on appeal is to sanction the use of the restraining order to break strikes—which was precisely what Congress wanted to avoid."

for the express purpose of testing the validity of the court's order and its jurisdiction over the subject matter." Yet petitioner was denied the right to present this testimony.

I agree with the dissenting judge in the Ohio Court of Appeals, 47 L. R. R. M. 2230, 2233, that there is a vast difference between a defendant openly contumacious and defiant of a court order and one who disobeys the order pursuant to an understanding with court and counsel in order to test the underlying jurisdictional issues. If petitioner's contentions are true, he cannot be punished for violating the order after this agreement, and therefore he has a right to be heard. *In re Oliver,* 333 U. S. 257, 275.

On this basis I agree that the state contempt order must be set aside.