Courtland PITTS, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted May 12, 1980.

Decided Sept. 17, 1980.

Richard E. Fairbanks, Jr. (argued), Asst. Public Defender, Wilmington, for defendant–appellant.

J. Patrick Hurley, Jr. (argued), Deputy Atty. Gen., Wilmington, for plaintiff–appellee.

Before HERRMANN, C. J., and DUFFY and QUILLEN, JJ.

QUILLEN, Justice:

The following statement of facts is taken practically verbatim from the defendant's brief, such statement having also been adopted by the State in its answering brief.

Courtland Pitts was called as a witness on behalf of the State of Delaware during the trial of Messrs. Hickman and Williams on June 18, 1979. Mr. Pitts had testified in an earlier proceeding and expressed to the Court and prosecutor an unwillingness to testify again. Mr. Pitts took the stand, but when asked to swear on the Bible or to be affirmed, he said:

"I don't know anything about this charge. I told you.

"I wish you all both would stop bothering me."

The Trial Judge explained to Mr. Pitts that "everytime you refuse to answer my question or refuse to take the oath . . . I'll add five months to your sentence. . . ." After considerable discussion on the matter between the Trial Judge, the Deputy Attorney General and the defendant and after a short recess, Mr. Pitts still declined to answer questions or to swear or be affirmed. The Trial Judge then proceeded to hold the defendant, Courtland Pitts, in contempt of court on two separate occasions and immediately sentenced him to two consecutive terms of five months imprisonment. Mr. Pitts explained his refusal as follows:

"If you can't take my word me telling you sitting here and telling you I don't know nothing about it, I'm not going to swear or affirm to nothing."

During that time, Mr. Pitts was not afforded counsel. The Trial Court, subsequent to finding Mr. Pitts in contempt and sentencing him, briefly inquired as to whether the defendant, an incarcerated inmate on other charges, had an attorney. The following colloquy took place:

"THE COURT: Does Mr. Pitts have an attorney?

"MR. LETANG: I'm not sure if–

"MR. PITTS: What do I need an attorney for?

"MR. LETANG: Do you have an attorney?

"MR. PITTS: What do I need one for?

"MR. LETANG: I assume he doesn't have an attorney. I would suggest that we recess and see if he may have a Public Defender, and I'll talk to that Public Defender.

"MR. PITTS: I don't need no Public Defender.

"THE COURT: Maybe somebody can explain to him it's easier for him to take the stand and not get ten months plus any additional time.

"MR. PITTS: Ain't nobody can explain nothing to me.

"THE COURT: It's up to you whether or not you wish to proceed with this witness.

"MR. PITTS: I–You might as well let me step off the case if you want to get on with this."

The State, then, decided to withdraw Mr. Pitts as a witness.

Thus, Mr. Pitts was summarily charged and convicted on two counts of contempt of court and he was immediately sentenced to two consecutive terms of five months imprisonment. He appeals.

Four questions have been raised on appeal: (1) did the Trial Court err in holding a summary criminal contempt hearing for defendant's refusal to be sworn as a witness? (2) did the Trial Court err in holding defendant twice in contempt and in sentencing defendant twice? (3) did the Trial Court deny the defendant his constitutional right to trial by jury? and (4) did the Trial Court deny the defendant his constitutional right to court appointed counsel?

We note initially that these questions relate solely to the necessary or desirable technical requirements of contempt. They do not relate at all to the demeanor or manner of the Trial Judge. The Trial Judge, faced with considerable provocation, demonstrated admirable judicial temperment. Notwithstanding our different view on certain matters, we commend him for his effort to be fair in a highly technical area of the law.

The first question turns on statutory construction. Under our new Criminal Code, all criminal offenses are defined by statute. 11 *Del.C.* § 202. The Code excludes civil contempt but criminal contempt is codified in 11 *Del.C.* § 1271. 11 *Del.C.* § 202(b); Delaware Criminal Code with Commentary on § 202, p. 7 (1973). The pertinent statutes on the instant question are 11 *Del.C.* §§ 1271–1272.[1]

The defendant claims that the use of summary contempt authorized by § 1272 is statutorily limited to criminal contempts defined in § 1271(1) and cannot include a contempt proceeding for refusal to be sworn as a witness because that is specifically covered in § 1271(4).

The matter is somewhat confusing. A violation of § 1271(1) is a class B misdemeanor and carries a maximum prison sentence of 6 months, whereas a violation of § 1271(4) is a class A misdemeanor with a maximum prison sentence of 2 years. 11 *Del.C.* § 4206(a)–(b). On the other hand, the Commentary to the Code says:

"Subsection (4) deals with particularly serious cases of refusal to be sworn as a witness or to answer proper questions after being sworn. Some such conduct will be reached by subsection (1) also, but a separate provision is needed for cases which do not rise to insolence to the Court."

Delaware Criminal Code with Commentary § 1271, p. 381 (1973). That comment might lead one to conclude that § 1271(1) cases, the "insolence" cases, are more aggravated. But compare "contumacious refusal" language in § 1271(4). It probably does not make sense to try to analyze the statute in terms of aggravation because the statute was written during the period when the six months or less petty crime concept was evolving for purposes of a federal constitutional right to jury trial. See *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Frank v. United States*, 395 U.S. 147, 149–50, 89 S.Ct. 1503, 1505–06, 23 L.Ed.2d 162, 166–67 (1969), rehearing denied 396 U.S. 869, 90 S.Ct. 34, 24 L.Ed.2d 123 (1969); *Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437, 440 (1970). See also *Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912, 919 (1974), particularly n.4.

---

1. The statutes read as follows:

"§ 1271. Criminal contempt; class A misdemeanor; class B misdemeanor.

"A person is guilty of criminal contempt when he engages in any of the following conduct:

"(1) Disorderly, contemptuous or insolent behavior, committed during the sitting of a court, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority; or

"(2) Breach of the peace, noise or other disturbance directly tending to interrupt a court's proceedings; or

"(3) Intentional disobedience or resistance to the process, injunction or other mandate of a court; or

"(4) Contumacious refusal to be sworn as a witness in any court proceeding or, after being sworn, to answer any proper interrogatory; or

"(5) Knowingly publishing a false or grossly inaccurate report of a court's proceedings; or

"(6) Intentional refusal to serve as a juror; or

"(7) Intentional and unexcused failure by a juror to attend a trial at which he has been chosen to serve as a juror; or

"(8) Intentional failure to appear personally on the required date, having been released from custody, with or without bail, by court order or by other lawful authority, upon condition that he will subsequently appear personally in connection with a criminal action or proceeding.

"Criminal contempt is a class A misdemeanor, except for violations of subdivision (1) of this section. A violation of subdivision (1) of this section shall be a class B misdemeanor."

"§ 1272. Criminal contempt; summary punishment.

"A person who commits criminal contempt as defined by § 1271(1) of this title may in the discretion of the court be convicted and sentenced for that offense without further criminal proceedings during or immediately after the termination of the proceeding in which the act constituting criminal contempt occurred."

The jury trial factor therefore was crucial in the classification of summary contempt as a class B misdemeanor.

■ It seems to us that there is, as the Commentary recognizes, a clear overlap in the subsections. Furthermore, we think the extent of the overlap has to be determined by the language of the statute. The language in § 1271(1) refers to "[d]isorderly, contemptuous *or* insolent behavior ...." (emphasis added). The word "contemptuous" thus is given a status equal to and independent of the words "disorderly" and "insolent". A refusal to be sworn traditionally is "contemptuous" conduct [*United States v. Wilson,* 421 U.S. 309, 314–15, 95 S.Ct. 1802, 1805–06, 44 L.Ed.2d 186, 192 (1975)] and, if such refusal is "committed during the sitting of a court, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority", it would constitute a violation of § 1271(1). Thus, while perhaps the draftsmen contemplated summary contempt use primarily in situations of disorder and insolence, they also appear to have deliberately granted the trial judge a wide discretion to balance all the factors in determining whether or not to use the summary contempt power. Of course, if the trial judge chooses the summary route, the defendant is spared the risk of the maximum two year prison sentence since a § 1271(4) proceeding is foreclosed.

■ We conclude that the Trial Judge here did not err in holding a summary criminal contempt hearing pursuant to 11 *Del.C.* §§ 1271(1)–1272 for defendant's refusal to be sworn as a witness.

The second question focuses on the dual conviction and sentence. Initially, we note that the defendant has claimed that the Trial Judge failed to follow the summary contempt procedure set forth in Superior Court Criminal Rule 42(a).[2] But no major emphasis has been given this alleged error

as an independent ground for reversal and we hesitate to consider it absent a claim of prejudice or inadequate record. The record here is precise.

■ We think it is clear from the comments of the Trial Judge that the defendant was subjected to a dual five month sentence for two criminal contempts summarily adjudicated. The subsequent contemptuous act was so interwoven with the prior conduct as to be inseparable therefrom. There was a single crime. See, e. g., *Yates v. U. S.,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States v. Costello,* 2d Cir., 198 F.2d 200 (1952); Annot., Separate Contempt–Successive Refusal, 94 A.L.R.2d 1246 (1961). Compare *In re Amato,* N.Y.Supr., 204 Misc. 454, 124 N.Y.S.2d 726 (1953). We conclude that, regardless of the resolution of the right to counsel question, the second conviction and sentence cannot stand.

■ As to the third question and the right to jury trial, we need only note that we have found the summary contempt proceeding pursuant to §§ 1271(1)–1272 to be proper as to a single crime and therefore the statutory maximum sentence that could be imposed was six months. Given a single five month sentence, we conclude there is no violation of the right to jury trial.

■ We turn finally to the fourth question and the defendant's right to court appointed counsel. We start with the *Argersinger* proposition that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972). Compare *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

The State has not disputed the defendant's indigency. The defendant has been

---

2. The rule reads:
"(a) Summary Disposition. A criminal contempt may be punished summarily if the Judge certifies that he saw or heard the conduct constituting the contempt and that it was commit-
ted in the actual presence of the Court. The order of contempt shall recite the facts and shall be signed by the Judge and entered of record."

sentenced to prison. The facts disclose no "knowing and intelligent waiver" to a right of counsel. Indeed, the only inquiry by the Court about counsel occurred after both sentences. Understandably, however, the State contests the applicability of *Argersinger* in a summary contempt proceeding. There is a long history upholding summary adjudication including imprisonment for contempts "committed in the face of the court." 2 G. Sharswood, Blackstone's Commentaries, Book IV, ch. 20, p. 286 (1895). See also *In re Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888); *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *In re Green*, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962). The following language from the *Cooke* case demonstrates the force of this history:

> "To preserve order in the courtroom for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court, when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law. Such a case had great consideration in the decision of this court in *Ex parte Terry*, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405. It was there held that a court of the United States, upon the commission of a contempt in open court, might upon its own knowledge of the facts, without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law."

267 U.S. at 534–35, 45 S.Ct. at 394, 69 L.Ed. at 773. Moreover, although the defendants in *United States v. Wilson, supra,* did have counsel, it is interesting to note that the United States Supreme Court in that 1975 decision upheld the use of summary contempt in a refusal to testify case. It is worth focusing on Chief Justice Burger's opinion of the Court and Justice Blackmun's concurrence:

> "In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting, Rule 42(a) provides an appropriate remedial tool to discourage witnesses from contumacious refusals to comply with lawful orders essential to prevent a breakdown of the proceedings. Where time is not of the essence, however, the provisions of Rule 42(b) may be more appropriate to deal with contemptuous conduct. We adhere to the principle that only '[T]he least possible power adequate to the end proposed' should be used in contempt cases. *Anderson v. Dunn*, 6 Wheat. 204, 231, 5 L.Ed. 242 (1821). See *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974). As with all power, the authority under Rule 42(a) to punish summarily can be abused; the courts of appeals, however, can deal with abuses of discretion without restricting the Rule in contradiction of its express terms, and without unduly limiting the power of the trial judge to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial."

421 U.S. at 319, 95 S.Ct. at 1808, 44 L.Ed.2d at 194–95.

> "Summary contempt, especially summary criminal contempt, as the Court indicates, *ante,* at 319 is not a power lightly to be exercised. Nevertheless, summary criminal contempt is a necessary and legitimate part of a court's arsenal of weapons to prevent obstruction, violent or otherwise, of its proceedings. It is not seriously disputed that a refusal to testify is punishable as a criminal contempt. So long as this Court holds, as it has, that the summary procedure of Rule 42(a) satisfies the requirements of due process, the Rule should be read to mean precisely what it says."

421 U.S. at 321–22, 95 S.Ct. at 1809, 44 L.Ed.2d at 196 (Blackmun, J., concurring).

See also Annot., Right to Counsel in Contempt Proceedings, 52 A.L.R.3d 1002, 1014–19 (1973).

In light of the strong history and recent affirmation by the United States Supreme Court of the summary contempt power, we are somewhat hesitant to make a blanket constitutional ruling that *Argersinger* applies in every case of summary contempt regardless of how aggravated the circumstances. We note that the United States Supreme Court has not required counsel in every context as a matter of due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We also note our neighbor has struggled with this question and we have nothing of substance to add to the policy factors discussed by Justices of the Pennsylvania Supreme Court. *Commonwealth v. Crawford*, Pa.Super., 466 Pa. 269, 352 A.2d 52 (1976). See also Kuhns, *The Summary Contempt Power: A Critique and a New Perspective*, 88 Yale Law Journal 39, 58 (1978).

While, from an appellate standpoint, it is better to have a lawyer appointed in every case because that eliminates the issue, we think it sufficient to dispose of the immediate case on a more narrow ground. Particularly, we need not attempt in advance to determine the constitutional question presented by a hypothetical disorderly and violent defendant. But, on the facts of this case, where there is no emergency such as conduct physically threatening to people and property in the courtroom and no other exigency unduly interfering with trial proceedings, the better policy, at least until the summary contempt situation is directly considered by the United States Supreme Court, is to afford an indigent defendant the opportunity for court–appointed counsel. Moreover, we do not think the United States Supreme Court would depart from the *Argersinger* requirement on the facts of this case. There is no good reason to deny the defendant the advantage of a disinterested advocate's view of the situation including a review of the defendant's state of mind, a consideration of the possibility of avoidance of conviction, a consideration and an appropriate statement as to sentence and a review of the legality of the proceedings. Failure to afford such opportunity requires reversal.

The judgment of the Superior Court is reversed and the case is remanded for a new trial on a single charge of criminal contempt under §§ 1271(1)–1272 and Rule 42(a) of the Superior Court Criminal Rules.