In the Matter of the Petition of Edmund M. HILLIS, Assistant Public Defender, for a Writ of Prohibition and/or Certiorari.

No. 321,2003.

Supreme Court of Delaware.

Submitted: Jan. 27, 2004.
Decided: March 24, 2004.

For a Writ of Prohibition and/or Certiorari. **DENIED.**

Angelo Falasca, Wilmington; Bernard J. O'Donnell and James Brendan O'Neill of the Office of the Public Defender, Wilmington, for Edmund M. Hillis.

Loren C. Meyers of the Department of Justice, Wilmington, for State of DE.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the court en banc.

PER CURIAM:

Edmund M. Hillis, Assistant Public Defender, petitions this Court for a writ of prohibition or certiorari challenging the authority of a Superior Court judge to sanction him through the imposition of costs of transporting prisoners to court and confining him for one hour to a courthouse "holding area." Hillis contends that: (i) a trial judge does not have the authority, absent a finding of contempt, to impose on defendant's counsel the costs of transporting an incarcerated defendant to court; (ii) a trial judge does not have the authority, absent a finding of contempt, to incarcerate counsel; and (iii) even assuming, *arguendo,* that a trial judge does have such authority, it is a violation of due process and fundamental fairness for a trial judge to take these actions without an opportunity for counsel to be heard. For the reasons set forth below, we decline to issue the writs requested.

On May 27, 2003, Hillis had ten cases scheduled for case review in the New Castle County Superior Court. Six of those cases were "final" case reviews, while the remaining four were "first" case reviews. Those cases involved the representation of nine individual clients, three of whom were in the custody of the Delaware Department of Corrections.

By approximately 12:30 p.m. on May 27, all of the morning case reviews had been completed except for the three cases involving incarcerated individuals with whom Hillis had not yet had the opportunity to consult. These incarcerated defendants were transported to the courthouse by the DOC, and were brought to a holding area adjacent to the courtroom where the trial judge's morning case reviews were taking place. The trial judge, wanting to ensure that Hillis had sufficient time to speak with these three defendants, called a recess to allow Hillis to talk with his clients in the holding area. The trial judge stated that the court would reconvene at 2:00 p.m. to review the three remaining cases. The record reflects that Hillis had no scheduled afternoon case reviews and that the trial court considered that fact in rescheduling Hillis' case reviews for 2:00 p.m.

The trial judge asserts that Hillis acknowledged this 2:00 p.m. start time. However, Hillis raises a factual dispute about whether he could have acknowledged the start time. He maintains that he was in the holding area consulting with his clients at the time the trial judge rescheduled for 2:00 p.m. While our review of the transcript confirms the inconsistency, we believe it is unnecessary to resolve this factual dispute in order to address the issues presented by Hillis' petition.

The same courtroom that was used for morning case reviews was used for Hillis'

three case reviews at 2:00 p.m.[1] When the case reviews reconvened at 2:00 p.m., the trial judge observed that Hillis was not present. After waiting until 2:10 p.m., the trial judge directed the bailiff to call Hillis from the courtroom telephone. The bailiff reached Hillis at his office, and informed Hillis that he was due in court. Hillis arrived at the courtroom sometime between 2:20 p.m. and 2:25 p.m. Although the trial judge was obviously on the bench when Hillis arrived, Hillis offered no apology or explanation to the court for not being present at 2:00 p.m. Hillis instead went directly *through the courtroom* to the holding area adjacent to the courtroom.

The trial judge, believing that Hillis' delay would impede the afternoon case reviews scheduled before another judge, instructed the bailiff to find Hillis. After Hillis returned to the courtroom, the following exchange occurred:

THE COURT: Tell Mr. Hillis to come out now. Ed, we are a half an hour late. Let's move it along. I don't want to hear anything from sidebar.

Kevin, excuse me. We are in session. We need to get started with something. Regrettably, we are 30 minutes late getting started, so I need your help. Just hold on for a few minutes. Thank you.

MR. HILLIS: Your Honor, we can take care of them now, if you'd like. Just set them for trial or final case review.

THE COURT: What?

MR. HILLIS: My cases.

THE COURT: Why?

MR. HILLIS: Because, Your Honor, I have worked too hard this morning. I had too many cases on. I'm not going to be abused this way. I was not a half an hour late. I was trying to track down prosecutors so I could bring these cases to fruition. Each of these cases involved a situation where I had—

THE COURT: We reset this for 2:00. I had the court reporter check it. The bailiff knew it. The guards knew it. We were all here. You were in your office. We set it at 2:00 because you did not have any reviews in the afternoon, and I said we'd be back here at 2:00, and that was 12:30—

MR. HILLIS: Your Honor—

THE COURT:—and now you take a nonapologetic tone and accuse me of working you too hard. That is unacceptable. You walked in here a half an hour late—that's it.

MR. HILLIS: Well—

THE COURT: These will be on the calendar for next week.

MR. HILLIS: Very well.

THE COURT: And you will reimburse the Department of Corrections at $89 per prisoner who was unnecessarily transported here. That is your sanction.

MR. HILLIS: We will take an appeal of that, Your Honor.

THE COURT: There is no appeal. It is not a contempt finding, Mr. Hillis. You were a half an hour late. If you want to appeal that, fine.

MR. HILLIS: Your Honor—

THE COURT: It is not a contempt finding. It is a sanction for being a half an hour late, walking in here, not apologizing for being a half an hour late, Mr. Hillis, when we set this at 2:00, specifi-

---

1. Afternoon cases reviews with another Superior Court judge were scheduled for this courtroom at 2:30 p.m. This is, apparently, a common start time for afternoon case reviews in the Superior Court. The trial judge used the same courtroom for Hillis' 2:00 p.m. case reviews because he believed that they would be completed by 2:30 P.M. and would not interfere with the afternoon case reviews handled by another judge.

cally for your schedule because you didn't have anything this afternoon.

We have three prisoners out there. That costs the Department of Correction a lot of money to bring them here and back. The last I heard, the average cost per trip is $89 a trip. It's $89 per each of those three defendants.

You've had Judge Alford waiting. We have another court reporter sitting here.

MR. HILLIS: Your Honor, may I explain why I wasn't here at 2:00.

THE COURT: No, you may not, because you weren't. And we called you and you were in your office and not here.

MR. HILLIS: Yes, sir.

THE COURT: You can't explain that.

MR. HILLIS: I could if you'd give me a chance.

THE COURT: Nope. Here is your sanction.

MR. HILLIS: Thank you.

That's a very reasonable approach to take, Your Honor.

THE COURT: Mr. Hillis, you can stay in there for another hour.[2]

We address two issues raised by Hillis' petition. The first is under what circumstances a trial judge may find a person in contempt without providing notice and a hearing. The second is whether, here, the trial judge's sanction was a reasonable response to Hillis' conduct.

■ Under Delaware's Criminal Code, all criminal offenses are defined by statute.[3] While the Criminal Code does not address civil contempt, it has codified criminal contempt in 11 *Del. C.* § 1271.[4] The pertinent statutes with respect to Hillis' petition are 11 *Del. C.* §§ 1271[5] and 1272.[6]

---

2. Transcript of Portions of Colloquy at Case Reviews, pp. 4–7.

3. DEL. CODE ANN. tit. 11, § 202 (2004).

4. *Pitts v. State*, 421 A.2d 901, 903 (1980); DEL. CODE ANN. tit. 11, § 202(b) (2004).

5. DEL. CODE ANN. tit. 11, § 1271 (2004). This section states:

A person is guilty of criminal contempt when the person engages in any of the following conduct:

(1) Disorderly, contemptuous or insolent behavior, committed during the sitting of a court, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority; or

(2) Breach of the peace, noise or other disturbance directly tending to interrupt a court's proceedings; or

(3) Intentional disobedience or resistance to the process, injunction or other mandate of a court; or

(4) Contumacious refusal to be sworn as a witness in any court proceeding or, after being sworn, to answer any proper interrogatory; or

(5) Knowingly publishing a false or grossly inaccurate report of a court's proceedings; or

(6) Intentional refusal to serve as a juror; or

(7) Intentional and unexcused failure by a juror to attend a trial at which the person has been chosen to serve as a juror; or

(8) Intentional failure to appear personally on the required date, having been released from custody, with or without bail, by court order or by other lawful authority, upon condition that the person will subsequently appear personally in connection with a criminal action or proceeding.

Criminal contempt is a class A misdemeanor, except for violations of subdivision (1) of this section. A violation of subdivision (1) of this section shall be a class B misdemeanor.

6. DEL. CODE ANN. tit. 11, § 1272 (2004). This section states:

A person who commits criminal contempt as defined by § 1271(1) of this title may in the discretion of the court be convicted and sentenced for that offense without further

■ Under 11 *Del. C.* § 1271(1), "[a] person is guilty of criminal contempt when the person engages in ... [d]isorderly, contemptuous or insolent behavior, committed during the sitting of a court, in its immediate view and presence, and directly tending to interrupt its proceedings or to impair the respect due to its authority ...." [7] The Delaware General Assembly "deliberately granted the trial judge a wide discretion to balance all the factors in determining whether or not to use the summary contempt power [under 11 *Del. C.* § 1271(1)]." [8] Further, it is this Court's view that 11 *Del. C.* § 1272 unambiguously stands for the principle that a judicial officer may find any person guilty of criminal contempt where that person's inappropriate conduct occurs in the immediate view and presence of the court. When making a finding of summary contempt under 11 *Del. C.* § 1271(1), the trial judge must follow the procedures established in Superior Court Criminal Rule 42(a). [9] The Rule itself is not complex and means precisely what it says. Therefore, the only question is whether the procedure for a finding of summary contempt satisfies the requirements of due process.

■ There is a long history of upholding summary adjudication "committed in the face of the court." [10] The United States Supreme Court has held that courts have "an inherent contempt authority ... as a power 'necessary to the exercise of all others.'" [11] The United States Supreme Court has further stated:

> That the power to punish for contempts is *inherent in all courts,* has been many times decided and may be regarded as settled law. It is essential to the administration of justice. The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once became possessed of the power.[12] (emphasis added).

The traditional justification for judicial contempt power has been necessity.[13] "Courts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and ... to preserve themselves and their officers from the approach and insults of pollution.'" [14] This Court, in *DiSabatino v. Salicete*,[15] has held that a court's inherent contempt au-

criminal proceedings during or immediately after the termination of the proceeding in which the act constituting criminal contempt occurred.

7. DEL. CODE ANN. tit. 11, § 1271(1) (2004).

8. *Pitts,* 421 A.2d at 904.

9. DEL. SUPER. CT. CR. R. 42(a) (2004) "Summary disposition. A criminal contempt under 11 *Del.C.* § 1271(1) may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record".

10. *See* 2 G. Sharswood, Blackstone's Commentaries, Book IV, ch. 20, p. 286 (1895); *In re Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed.

405 (1888); *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *In re Green,* 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962).

11. *Id.* (quoting *United States v. Hudson,* 7 Cranch 32, 11 U.S. 32, 34, 3 L.Ed. 259 (1812)).

12. *Young v. United States,* 481 U.S. 787, 795, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

13. *United Mine Workers of America v. Bagwell,* 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

14. *Id.* (quoting *Anderson v. Dunn,* 6 Wheat. 204, 19 U.S. 204, 227, 5 L.Ed. 242 (1821)).

15. 671 A.2d 1344 (Del.1996).

thority is settled law, reasoning that contempt power is "essential to the administration of justice." [16]

The United States Supreme Court, in *Johnson v. Mississippi*,[17] held that "[i]nstant action may be necessary where the misbehavior is in the presence of the judge and is known to him, and where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court." [18] Additionally, the United States Supreme Court has held that "[t]he flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." [19] That Court provided the following rationale:

> To preserve order in the courtroom for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or *disrespect to the court,* when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law.[20]

■ Delaware courts have adopted the same approach for a trial judge making a finding of summary contempt.[21] Accord-

ingly, we reaffirm the trial judge's inherent authority to find a person guilty of criminal contempt without providing a hearing where that person's inappropriate conduct occurred in the immediate view and presence of the court.

■ We are not unmindful of the fact the trial judge did not wish to formally find Hillis in criminal contempt. The trial judge imposed each of his sanctions without articulating any formal legal regime for the imposition of either sanction. We recognize that this opinion need only address the precise issues raised by the Hillis petitions, but we note the trial judge's authority at common law to impose sanctions summarily for civil contempt when due process standards equally applicable to criminal contempt are met. We further note that most often criminal contempt is imposed for disorderly or disrespectful conduct. If the primary purpose of the contempt proceeding, summary or otherwise, is to coerce, so that the "keys to the jail are in defendant's hands," then the proceeding is civil in nature.[22]

Here, the transcript clearly shows that the trial judge did not give Hillis an opportunity to explain his reasons for not appearing at 2:00 p.m. as the judge had ordered. The transcript also reflects the sarcastic and disrespectful tone Hillis took

---

**16.** *Id.* at 1348.

**17.** 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971).

**18.** *Id.* at 214, 91 S.Ct. 1778 (citing *Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 69 L.Ed. 767 (1925); *Harris v. United States,* 382 U.S. 162, 165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965)).

**19.** *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

**20.** *Cooke,* 267 U.S. at 534, 45 S.Ct. 390 (emphasis added).

**21.** *Pitts,* 421 A.2d at 905.

**22.** *State v. Mancari,* 223 A.2d 81, 82 (Del. 1966); *See also* Legal Memoranda of the Chief Magistrate of the Justice of the Peace Courts 80–25 (October 16, 1980), 80–25 Supplement (August 4, 1997), 84–118 (April 11, 1984), 84–118 Supplement (May 9, 1984), 84–118 Second Supplement (July 5, 1984) and 84–118 Third Supplement (January 10, 1996) (discussing the differences between civil contempt and criminal contempt).

in open court toward the trial judge. Members of the public, several unincarcerated criminal defendants, and members of the Delaware Bar were present in the courtroom during the exchange between the trial judge and Hillis. Members of the Bar, the trial judge and Hillis knew that the comment "we can take care of them now, if you'd like. Just set them for trial or final case review," reflected frustration and an "in-your-face" response to the trial judge's desire to dispose of the cases at case review, if possible, on the day scheduled. Indeed, the entire purpose of case review is to exhaust every opportunity to dispose of cases before valuable trial days are set aside for no purpose. The miscommunication between Hillis and the trial judge on scheduling and the frustration Hillis evidently felt in being chastised for being late when he did not know that he had been rescheduled for 2:00 p.m., while understandable, did not justify the insolence and sullen pique directed at the trial judge. Hillis' final comment: "That's a very reasonable approach to take, Your Honor" reflects the contumacious, "nonapologetic" tone that the trial judge noted

immediately before imposing the first sanction.[23]

We are mindful of the case load of the Office of the Public Defender and we recognize the resulting strain on our State's public defenders. We know that case review days, despite their utility for efficiently managing a docket, can be frenetic. Trial judges, deputy attorneys general and defense counsel face pressures that require the utmost patience and civility from all participants. Nevertheless, the substance and the tone that must be inferred from Hillis' conduct in the context of *this* case review day, cannot be tolerated in the courtrooms of our State. Here, the trial judge "acted instantly to suppress . . . disrespect to the court, when [it] occur[ed] in open court."

■ We recognize the trial judge disclaimed that he was making a finding of contempt. The trial judge followed all of the procedures, nevertheless, for making a summary finding of contempt under Superior Court Criminal Rule 42(a).[24] The record reflects that the trial judge certified

23. While the facts of this case predate this Court's November 1, 2003 adoption of the "Principles of Professionalism for Delaware Judges" and the "Principles of Professionalism for Delaware Lawyers," both *"Principles"* reflect a conscious effort by the Bench and Bar to reinvigorate our long standing commitment to civility. Had Hillis not walked through the courtroom upon his return at the bailiff's beckon, but instead stopped, and then offered his reason for not appearing precisely at 2:00 p.m., we trust that the trial judge would have entertained his explanation and no further confrontation would have occurred. Had the events unfolded as above described, then the trial judge would, no doubt, have taken the preferable course of ". . . allow[ing] a lawyer . . . to present a cause properly and to make a complete and accurate record . . . ," consistent with Principle No. 6. Had Hillis attempted to explain immediately upon returning, he would have satisfied his commitment under Principles of Professionalism for Delaware

Lawyers No. 4, which states: "Professional civility is conduct that shows respect not only for the courts and colleagues, but also for all people encountered in practice. Respect requires promptness in meeting appointments, consideration of the schedules and commitments of others, adherence to commitments whether made orally or in writing, promptness in returning telephone calls and responding to communications, and avoidance of verbal intemperance and personal attacks."

24. Del. Super. Ct. Cr. R. 42(a) (2004). This rule states:

Summary Disposition. A criminal contempt may be punished summarily if the Judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court. The order of contempt shall recite the facts and shall be signed by the Judge and entered of record.

that he saw and heard Hillis' inappropriate comments and that Hillis' conduct occurred in his presence. The trial judge then recited the facts before making his summary finding of contempt. Thus, we believe that despite his disclaimer the trial judge did, in fact, make a summary finding of contempt, and we must treat Hillis' petition in that context regardless of the trial judge's professed attempt to avoid a formal finding of contempt.

■ Here, Hillis' due process rights were not implicated. His comments constituted disruptive and insolent behavior. He demonstrated disrespect to a sitting judge in the presence of the Bar, the public and criminal defendants pending action in the Superior Court. Moreover, his conduct as an officer of the court disrupted the afternoon case reviews and assaulted the dignity and respect due the Superior Court and its sitting judges. We conclude that the trial judge, acting out of necessity, appropriately found Hillis in contempt. The trial judge acted immediately to maintain respect and decorum in the courtroom, to protect the court and his office from further insult, and to discourage future petulant behavior by other members of the Delaware Bar.[25] The trial judge's actions, that is, were "essential to the administration of justice." [26]

We note a troubling increase in the number of reported incidents of incivility by counsel in the courtroom.[27] Although an attorney's obligation is to zealously represent his or her clients, "to be aggressive is not a license to ignore the rules of evidence and decorum; and to be zealous is not to be uncivil." [28]

Incivility in open court infects the process of justice in many ways. It compromises the necessary public trust that the system will produce fair and just results; it negates the perception of professionalism in the legal community, and it erodes respect for all people involved in the process.[29] In other words, "An attorney who exhibits a lack of civility, good manners and common courtesy tarnishes the image of the legal profession ..." [30]

In this case, the facts support a finding of contempt and the trial judge's sanction was a reasonable response to the gravity of Hillis' disrespectful in-court conduct. The trial judge imposed a fine of $267 ($89 per defendant) based on numerous factors. First, the trial judge found Hillis was late to the 2:00 p.m. case review. Second, Hillis failed to acknowledge the trial judge when he did arrive, knew that the trial judge believed that he had "blown off" the 2:00 p.m. rescheduled case reviews, but nonetheless made no immediate effort to apologize or explain his 2:20–2:25 arrival. Third, Hillis' conduct occurred in the presence of members of the public, criminal defendants, prosecutors and defense attorneys. Finally, the trial judge in an October 23, 2003 letter report requested by this

---

**25.** *United Mine Workers of America,* 512 U.S. at 831, 114 S.Ct. 2552.

**26.** *DiSabatino,* 671 A.2d at 1348 (citing *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 795, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987)).

**27.** *See* Allan K. Harris, *The Professionalism Crisis—The "Z" Words and Other Rambo Tactics: The Conference of Chief Justices' Solution,* 53 S.C. L.Rev. 549, 589 (2002); Jean M. Cary, *Teaching Ethics and Professionalism in*

*Litigation: Some Thoughts,* 28 Stetson L.Rev. 305, 308 (1998).

**28.** *In re Williams,* 414 N.W.2d 394, 397 (Minn.1987).

**29.** *See* Ty Tasker, *Sticks and Stones: Judicial Handling of Invective in Advocacy,* The Judges' Journal 19–20 (2003).

**30.** *Principe v. Assay Partners,* 154 Misc.2d 702, 586 N.Y.S.2d 182, 184 (N.Y.Sup.Ct. 1992).

Court, stated his belief that other judges of the Superior Court had previously warned and sought to counsel Hillis about similar disrespectful outbursts made in open court.

Finally, Hillis' sarcastic comment, "That's a very reasonable approach to take, Your Honor" showed a deliberate lack of respect for the trial judge and his ruling. Intentional sarcasm is the only reasonable interpretation of Hillis' statement, and this comment prompted an immediate order by the trial judge that Hillis remain in the prisoner holding area for one hour. Faced with a disruption that threatened to spill over into another trial judge's afternoon case review session, and with open hostility to the earlier, milder sanction, the trial judge's response was reasonable. Hillis' detention was an appropriate attempt to cure the perception created in the eyes of those present that open-court incivility by *anyone*, even an attorney, would be tolerated.

The Delaware Bench and Bar have long been admired for the collegiality among and between its members. Members of the Bench and the Bar will no doubt, even in the sometimes frenetic and intense arena of open court criminal work, continue to work toward exchanges that reflect *mutual* respect and consideration. When, however, situations present themselves where misunderstandings cause passions to flare, the ultimate focus is and must be to reflect respect and confidence in the court's authority. Nothing less will suffice for the efficient administration of justice.

### Conclusion

Based on the foregoing, Hillis' Petition for Writ of Prohibition or Certiorari is DENIED.