OPINION
Defendant-appellant, Satish Kumar Tandon, appeals a decision rendered by the Jefferson County Court of Common Pleas, Domestic Relations Division, denying his motion for modification of a visitation order previously issued by the court.
Appellant and plaintiff-appellee, Melinda C. Tandon n.k.a. Melinda Conforte, were married in October 1990. A child, Stefano, was born issue of the marriage on August 1, 1991. Appellee filed for divorce on October 27, 1993, and the trial court issued a divorce decree on December 14, 1994. The decree designated appellee residential parent, while appellant agreed to supervised visitation. The order further decreed that after six months, either party could petition the court for modification of visitation rights.
Appellee relocated to Wierton, West Virginia, with Stefano and remarried in 1995. In May 1997, appellant filed a motion in Hancock County, West Virginia, seeking reallocation of parenting rights and custody of his son. On January 12, 1998, the Circuit Court of Hancock County issued an order stating that West Virginia, not Ohio, was the proper jurisdiction for the modification hearing. In response to this entry, Judge Mascio, trial judge in the Jefferson County Court of Common Pleas, Domestic Relations Division, issued an order January 23, 1998 stating that Hancock County was the proper forum for the action. On February 26, 1998, the Hancock County Circuit Court issued a temporary/interlocutory order granting appellant unsupervised visitation. Appellee remained the residential parent.
On February 27, 1998, appellee filed an ex parte motion with the Jefferson County Court of Common Pleas, Domestic Relations Division, requesting that appellant be granted only supervised visitation with Stefano. Appellee refiled this motion in the court on March 20, 1998, and asked the trial court to vacate its January 23, 1998 order in which it relinquished jurisdiction. On March 20, 1998 the court vacated its January 23, 1998 order and reinstated supervised visitation as set forth in the December 14, 1994 divorce decree.
Appellee then filed a writ of prohibition in the West Virginia Supreme Court of Appeals on March 26, 1998. On July 6, 1998, the court granted the writ and prohibited the Hancock County Circuit Court from enforcing its January 12, 1998 unsupervised visitation order.
On August 6, 1998, appellant filed a motion in the Jefferson County Court of Common Pleas, Domestic Relations Division, to modify the court's visitation schedule. Appellant sought unsupervised visitation, while appellee opposed this motion.
Following numerous delays, the trial court held a hearing on the matter. On April 7, 2000, the trial court issued its decision denying appellant's request for unsupervised visitation. The trial court also found appellant and Attorney McKenna in contempt of court and assessed fines to the parties accordingly. The trial court made further findings of frivolous filings against Attorney McKenna and as a result, awarded appellee $765.00 in attorney fees.
On April 13, 2000, appellant and Attorney McKenna filed a timely notice of appeal. The parties have filed a myriad of motions on appeal. On July 14, 2000, upon motion of appellant, this court issued an order remanding the matter to the trial court for the sole purpose of establishing a visitation order that accorded appellant his right to visitation. The trial court complied with this order and issued a visitation order on July 31, 2000, whereby appellant's supervised visitation schedule alternated between Jefferson and Columbiana County.
Appellant's first assignment of error states:
 "THE RULING OF THE TRIAL COURT ON THE ISSUE OF MODIFICATION OF VISITATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant's second assignment of error states:
 "ON 12/14/94 THE DIVORCE DECREE SET FORTH AND PROVIDED FOR SUPERVISED VISITATION FOR SIX (6) MONTHS AFTER WHICH TIME EITHER PARTY MAY FILE A MOTION TO CHANGE RESTRICTED VISITATION. THE TRIAL COURT FAILED AND REFUSED TO COMPLY WITH ITS OWN DECREE AND APPLICABLE LAW BY NOT RECOGNIZING THAT A PARENT'S RIGHT TO VISITATION IS A NATURAL RIGHT, AND THE PARENT CONTESTING VISITATION PRIVILEGES, HAS THE BURDEN OF PROOF."
Because appellant's first two assignments of error raise common issues of legal analysis, they will be addressed together.
Appellant essentially argues that the trial court erred in denying his request for modification of the trial court's original visitation order. He argues unsupervised visitation is a natural right, which can only be denied upon a showing of "extraordinary circumstances." Appellant asserts that the trial court abused its discretion in denying his request for unsupervised visitation as there were no allegations that he committed any form of abuse or neglect against the child.
In Braatz v. Braatz (1999), 85 Ohio St.3d 40, the Ohio Supreme Court clarified what standards must be used when a court entertains a motion to modify visitation rights. Modification of visitation rights is governed by R.C. 3109.051. Braatz, 85 Ohio St.3d at 44-45. A trial court must consider the fifteen factors listed in R.C. 3109.051(D) and has the discretion to then determine whether or not a change in visitation is in the best interest of the child. Braatz, 85 Ohio St.3d at 45.
R.C. 3109.051(D) provides in pertinent part:
 "In determining whether to grant companionship or visitation rights to a parent * * * the court shall consider all of the following factors:
 "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity, or affinity * * *;
 "(2) The geographical location of the residence of each parent and the distance between those residences * * *;
 "(3) The child's and parent's available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
"(4) The age of the child;
 "(5) The child's adjustment to home, school, and community;
 "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent * * * as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed to the court;
"(7) The health and safety of the child;
"* * *
"(9) The mental and physical health of all parties;
 "(10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights * * *;
"* * *
 "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 "(15) Any other factor in the best interest of the child." (Emphasis added.)
A trial court's decision regarding visitation matters is reviewed under an abuse of discretion standard. Braatz, 44 Ohio St.3d at 44. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore, (1983),5 Ohio St.3d 217 . The trial court's discretion is not unlimited, but must be exercised in a manner which best protects the interests of the child. Braatz, 85 Ohio St.3d at 45.
Appellant argues that the trial court may restrict a noncustodial parent's visitation rights if, and only if, the parent is determined to be unfit or if there is a significant or substantial risk of serious physical or emotional harm to the child. This court recently rejected that argument in Jannetti v. Nichol (May 12, 2000), Mahoning App. No. 97-CA-239, unreported, 2000 WL 652540, and noted:
 "This position understates the court's authority over visitation determinations. R.C. § 3109.051(A) grants the trial court broad authority to restrict visitation. This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Id. at *3.
The trial court's opinion shows that the trial judge expressly considered each of the relevant factors set forth in R.C. 3109.051(D). After engaging in a substantive analysis of the law and facts, the trial court determined that the evidence as presented demonstrated that modification of the visitation order was not in the best interest of the child. After thoroughly reviewing the record and applying the law to the facts of the instant case, we find the trial court did not abuse its discretion in denying appellant's motion for modification of visitation.
When reviewing the factors set forth in R.C. 3109.051(D), the record shows that appellee presented voluminous evidence of how unsupervised visitation was not in the best interest of the child. Although appellant presented some evidence in support of the argument that he was qualified to have unsupervised visitation, appellant failed to present evidence demonstrating that unsupervised visitation was in the best interest of the child.
Appellee presented several pieces of evidence tending to show that modification of the supervised visitation order was not in the best interest of the child. In reference to R.C. 3109.051(D)(1) and (5), which addresses the child's relationship and wishes and concerns with the noncustodial parent, appellee presented a substantial amount of evidence tending to establish that the child, Stefano, has an adversarial and contentious relationship and expresses a general dislike for spending time with appellant. The evidence presented by appellee demonstrated that Stefano has an adversarial relationship, at best, with appellant under the terms and conditions of the supervised visitation agreement. Given the adversarial nature of the relationship between appellant and Stefano, appellant failed to present any evidence of how unsupervised visitation is in Stefano's best interest.
In addition, the court also viewed substantial evidence under R.C.3109.051(D)(15) which tended to show that unsupervised visitation was not in the best interest of the child. Appellee presented expert testimony and the reports of psychologists, which concluded that unsupervised visitation was not in the best interest of the child. In an evaluation conducted in the parties' original divorce proceedings, Dr. Mendelson expressed concern that unsupervised visitation was not in the best interest of the child:
 "He seemed to be showing very little interest in Stephano [sic] and dealing with Stephano [sic] and trying to find out the things that I would have thought a father would want to know about his son. With the anger that I see in Mr. Tandon and his desire to control both his wife and child, it would indeed seem that there might be some danger in allowing him to have unrestricted visitations. * * *" Dr. Mendelson's Report June 24, 1994 at 9.
Similar observations are found in Dr. Krieg's report:
 "He lacks empathy, is unwilling to recognize or identify the feelings and needs of others. This is clear with regard to his concerns for wanting his son without talking about what his son needs from him * * *.
 "Mr. Tandon is so self-absorbed that he sees Stefano as an extension of his own needs and therefore has a tendency to expect Stefano to meet his needs rather than vice versa." Dr. Krieg's Report May 20, 1999 at 5 and 13.
A review of the record also illustrates that the guardian ad litem
expressed concerns that unsupervised visitation was not in the child's best interest:
 "Mr. Tandon spent most of his time talking about the various legal actions he has filed, telling me he wants his rights and he has filed to get his rights.
 "My impression of Satish Tandon is that his rights are most important to him.
"* * *
 "2.) I have serious concerns about the very different views that Stefano and Mr. Tandon have of their relationship. * * * I do not believe it is in Stefano's best interest at this time to spend additional time with his father when his father is so out of touch with his feelings.
"* * *
 "This and other instances with Mr. Tandon have lead me to believe that he is often not credible and that his word cannot be trusted. Though he says that he never threatened to steal his son and that he only wants normal unsupervised visitation with his son, I do not believe that his word can be trusted." (Emphasis added.) Guardian Ad Litem
Report June 21, 1999 at 5-8.
In response to this evidence, appellant presented the psychological reports and testimony of Dr. Hewitt and Dr. Darnall. Both of these psychologists opined that appellant did not have a behavioral disorder, and that he should therefore be granted unsupervised visitation. However, in addition to the fact that these opinions were based on an incomplete history and diagnosis of appellant, neither of these psychologists stated in their reports that unsupervised visitation was in the best interest of the child.
Based upon this evidence and an exhaustive analysis of the other factors set forth in R.C. 3109.051(D), the trial court concluded that granting appellant unsupervised visitation was not in the best interest of the child. As noted supra, the decision to amend or modify visitation rights is governed by the "child's best interest." Braatz,85 Ohio St.3d at 45; R.C. 3109.051(D). Based on the trial court's exhaustive analysis of the factors enumerated in R.C. 3109.051(D), and given the fact that appellant failed to rebut the substantial evidence submitted by appellee that unsupervised visitation was not in the best interest of the child, we cannot say that the trial court abused its discretion in denying appellant's motion to modify the visitation order. In looking to the trial court's reasoning, given the evidence on record, this court is not in the position to substitute its judgment for that of the trial court as the trial court's decision was not unreasonable, arbitrary, or unconscionable.
Therefore, appellant's first and second assignments of error are without merit.
Appellant's third assignment of error states:
 "THE TRIAL JUDGE, IN NOT GRANTING THE MOTION FOR CHANGE OF VENUE, OR ALTERNATIVELY, NOT RECUSING HIMSELF, DENIED APPELLANT-DEFENDANT DUE PROCESS OF LAW AS DEMONSTRATED BY A REVIEW OF THE RECORD AND RULINGS ISSUED BY THE COURT."
Appellant's third assignment of error essentially consists of three arguments.
First, appellant argues that the trial judge denied appellant due process of law by not recusing himself. He contends that there was an appearance of impropriety because the trial judge at one time represented appellee's mother in a divorce proceeding. Appellant also asserts that once he filed a civil suit against the trial judge, the trial judge could not possibly decide the case before him in an impartial manner. Appellant contends that it was therefore reversible error for the trial judge not to recuse himself in the instant case.
A thorough review of the record and case law show that appellant's arguments are without merit. Appellant filed three affidavits of disqualification against the trial judge with the Ohio Supreme Court. Appellant's arguments on appeal consist of the same allegations for removing the trial judge as set forth in the three affidavits of disqualification that Chief Justice Moyer overruled. The reality is that appellant is asking us to rule that the relationship between the trial court judge and appellee's mother warranted disqualification when the Chief Justice of the Ohio Supreme Court has already determined, on three separate occasions, that it did not. As noted by the Fourth District Court of Appeals in a similar matter, this court is without jurisdiction to do so:
 "We are being asked, in essence, to overrule the determinations made by Chief Justice Moyer. We decline. This Court is without authority to review a judicial disqualification which has been decided by the Chief Justice. See State v. Caldwell (Dec. 29, 1989), Jackson App. No. 593, unreported." State v. Wolfe (June 17, 1996), Gallia App. No. 95 CA 04, unreported, 1996 WL 344092, at *8.
Appellant also argues that the trial judge should also have recused himself due to the bias and prejudice he developed toward appellant during the course of the proceedings.
Bias or prejudice on the part of the trial judge is not supposed to exist, but if it does then a judge should disqualify himself. Canon 3(C)(1)(a) of the Code of Judicial Conduct. A trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the general presumption of integrity.Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309, 322.
Appellant's argument is again without merit. First, appellant argues that this personal bias is evident through a letter which the trial judge addressed to Chief Justice Moyer in which appellant argues that the trial judge expresses his desire to "appear" impartial. Appellant's argument is taken out of context. Far from showing a bias against appellant, the letter, when taken in its entirety, indicates that the trial judge expressly recognized his professional and ethical duty to act impartially, expressed no personal feelings against appellant, and left the matter within the discretion of Chief Justice Moyer as to whether or not he would remain on the case. The trial judge's actions hardly qualify as sufficient evidence of bias or prejudice to overcome the presumption of integrity and impartiality.
Appellant also alleges that evidence of bias can be witnessed through a statement made by the trial judge during the course of the proceedings whereby the judge commented that this case had been "a nightmare for him." This argument also lacks merit. A review of the record indicates that the trial judge expressed frustration with the conduct of both parties. As noted by the trial court, both sides' "delay tactics" and failure to comply with court orders frustrated the court. The court heard several instances of testimony and evidence where the parties failed to comply with court orders. Despite the tumultuous nature of the proceedings below and the actions taken by both parties, the trial court maintained its impartiality and did not act in a prejudicial or biased manner against appellant.
In his second argument under this assignment of error, appellant argues that the trial court erred by denying his motion for a change of venue from Jefferson County to Columbiana County. In this motion, appellant made various allegations regarding bias and prejudice on the part of the trial court judge which appellant alleges interfered with his ability to receive a fair and impartial hearing. The trial court denied this motion during the course of the lower court proceedings. On appeal, appellant renews these arguments, and alleges that he was deprived of a fair trial due to bias on the part of the trial judge.
Civ.R. 3(C)(4) governs motions for change of venue and provides:
 "Upon a motion of any party or upon its own motion the court may transfer any action to an adjoining county within this state when it appears that a fair and impartial trial cannot be had in the county in which the suit is pending."
This rule places the discretion in the trial court to determine whether a change of venue should be ordered.
Justice v. Reda (Mar. 27, 1990), Franklin App. 89AP-1084, unreported, 1990 WL 33714 at *2, citing State ex rel. Dunbar v. Ham (1976),45 Ohio St.2d 112. "Accordingly, the trial court's decision will not be overruled absent a demonstration that its attitude was unreasonable, arbitrary, or unconscionable." Id., citing Blakemore, supra. In a motion for change of venue pursuant to Civ.R. 3(C), the burden is upon the movant to show that a fair and impartial trial cannot be had in a county in which a suit is pending. First Nat. Bank Trust Co. ofWheeling v. Jet Realty, Inc. (Aug. 10, 1987), Belmont App. No. 86-B-13, unreported, 1987 WL 15456 at *2.
The trial court did not abuse its discretion in denying appellant's motion for change of venue as appellant failed to show that he could not receive a fair or impartial trial in Jefferson County. Once again, appellant's allegations surrounding the lack of a fair or impartial trial stem from the perceived bias or prejudice of the trial judge. As notedsupra, these allegations were reviewed by Chief Justice Moyer on three separate occasions and found to be without merit. Clearly the trial judge was frustrated with both parties to these proceedings, but this frustration hardly qualifies as evidence that appellant could not receive a fair and impartial hearing before the trial court.
In his third argument under this assignment of error, appellant argues that the trial court erred in failing to give full faith and credit to the unsupervised visitation order issued by the Hancock County Court of West Virginia by re-imposing restrictive visitation on March 20, 1998 while the Hancock County Court order granting unsupervised visitation was still in effect.
As to judgments, the full faith and credit obligation imposed by the United States Constitution is exacting. A final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. Baker by Thomas v. General Motors Corp. (1998),522 U.S. 222, 224. However, as noted in American Jurisprudence:
 "Temporary or interlocutory orders of one state generally are not entitled to full faith and credit in another state." 47 American Jurisprudence 2d (1995) 413, Judgments, Section 952.
 See, also 63 Ohio Jurisprudence 3d (1985) 142, Judgments, Section 366, and Barber v. Barber (1944), 323 U.S. 77.
The February 26, 1998 West Virginia Hancock County Court order was not a final order, but rather, an interlocutory order: "the Family Law Master having determined that visitation shall be ordered on an interlocutory basis * * *." As such, the trial court did not violate the full faith and credit clause of the United States Constitution by reinstating restrictive visitation and not showing the temporary, unsupervised visitation order full faith and credit. In any event, the West Virginia Supreme Court of Appeals granted a writ that prohibited the West Virginia trial court from enforcing this order.
For the aforementioned reasons, appellant's third assignment of error is without merit.
Appellant's final assignment of error states:
 "THE FINDING OF CONTEMPT AGAINST APPELLANT- DEFENDANT AND HIS COUNSEL AS WELL AS THE AWARD OF ATTORNEY FEES TO PLAINTIFF WAS IN ERROR AND SHOULD BE REVERSED, AS THERE WERE MANY VALID AND COMPELLING REASONS FOR THE ACTIONS TAKEN."
Appellant's final assignment of error consists of two arguments. First, appellant essentially argues that the trial court committed reversible error by finding both Attorney McKenna and appellant in contempt of court.
Appellant and Attorney McKenna argue that there were compelling reasons for their noncompliance with the trial court's orders. Appellant also asserts that because he was not personally served with a copy of the motion for contempt, he received improper notice of the motion, and relies on Hansen v. Hansen (1999), 132 Ohio App.3d 795, in support of this argument.
Contempt is the broad power of a court to rectify conduct that "tends to bring the administration of the law into disrepute and disregard or otherwise tends to impede, embarrass or obstruct the court in the performance of its functions." In the Matter of Green (1961),172 Ohio St. 269, paragraph one of the syllabus, reversed on other grounds (1962), 369 U.S. 689. A trial court's finding of contempt will not be reversed absent an abuse of discretion. State ex rel. Ventrone v.Birkel (1981), 65 Ohio St.2d 10, 11. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore, supra.
Although the decision to hold a party in contempt of court is generally within the discretion of the court, R.C. 2705.03 requires that a party be given both notice and a hearing before a court may impose sanctions for contempt. In addition, a party cannot be held in contempt if he has purged himself by compliance with the court order before the contempt hearing. Applegate v. Applegate (Sept. 21, 2000), Franklin App. Nos. 99AP-1321 and 99AP-1399, unreported, 2000 WL 1358063 at *7.
A thorough review of the record shows that the trial court did not abuse its discretion in finding appellant and Attorney McKenna in contempt of court. As a preliminary matter, it appears that appellant and Attorney McKenna were provided with the requisite notice set forth in R.C. 2705.03.[1]
The trial court found appellant in contempt for failing to be evaluated by Dr. King. On October 13, 1998, the trial court issued an order whereby each party was authorized to obtain an independent psychological evaluation of the other party. Appellee selected Dr. King to evaluate appellant, and the trial court further ordered that appellant attempt to obtain this psychological evaluation within sixty days. Dr. King testified that, "[H]e [appellant] refused to see me." T.R. July 25, 1999 at 79. This evidence supports the trial court's conclusion that appellant acted in contempt of court by refusing to be evaluated by Dr. King.
Appellant argues that his refusal to be evaluated by Dr. King was justified, and argues that Dr. King had already formed a negative opinion against him prior to the trial court even issuing its October 13, 1998 order. However, simply because a party disagrees with a court order is not a valid reason for refusing to comply with that order. Appellantnever attempted to be evaluated by Dr. King. If appellant had justified concerns over the impartiality of Dr. King, he simply could have chosen to elicit those concerns on cross-examination, or challenged Dr. King's conclusions with the testimony or evaluation of another expert.
Appellant also argues that the trial court erred by holding him in contempt for failing to provide the court with proof of an alleged illness that caused him to miss a hearing on May 3, 1999. The trial court directed appellant to provide the court with a medical excuse. Appellant failed to do so, and was found in contempt. Appellant alleges that he in fact complied with the court's order by having a "Dr. Eddy" send a letter to appellee's counsel notifying him of appellant's illness.
The doctor's note attached to appellant's brief, which appellant alleges he sent to appellee's counsel, is not a proper part of the record for this court's review. There is no indication that the note was filed in the trial court below or otherwise properly made part of the record.
Therefore, the trial court did not abuse its discretion in finding appellant in contempt of court.
Finally, Attorney McKenna was found in contempt of court for advising appellant not to execute releases that the trial court had ordered him to execute[2]. Attorney McKenna argues that the trial court erred in finding him in contempt as he was seeking a stay of the trial court's May 25, 1999 order that ordered his client to execute various releases.
A thorough review of the record shows that the trial court did not abuse its discretion in finding Attorney McKenna in contempt of court. In its May 25, 1999 order, the trial court ordered appellant to sign various releases. Appellant appealed that order to this court, and moved for a stay of the trial court's order[3]. However, since the stay had not been granted, Attorney McKenna was required to comply with the trial court's order. Despite being required to do so, Attorney McKenna instructed his client not to execute the releases:[4]:
 "THE COURT:Mr. McKenna, have you given Mr. Mann all these releases that were previously ordered to be given him so he could obtain information? Yes or no?
"* * *
"MR. McKENNA: The answer is no on that.
"* * *
 "THE COURT: Then I'll hear testimony because there's a motion for contempt on that.
"* * *
"THE COURT: Why wasn't it done?
"* * *
 "THE COURT: I'm going to hear some evidence. He's got a motion for contempt on this against you and your client so there's going to be some testimony on this. * * *" T.R. June 10, 1999 at 14-18.
Thus, the foregoing testimony shows that Attorney McKenna instructed his client not to comply with the court's order. As such, Attorney McKenna acted in contempt of court. This testimony also shows that the trial judge heard evidence on appellee's motion for contempt against Attorney McKenna, and complied with its due process obligation by providing Attorney McKenna with a reasonable opportunity to be heard.
Based upon the foregoing, the trial court did not abuse its discretion in finding Attorney McKenna in contempt of court.
Finally, appellant argues that the trial court erred by making four findings of frivolous conduct against appellant's counsel. First, appellant asserts that given the contentious nature of this case, the filings were hardly of a frivolous nature. Next, appellant argues that the trial court erred by awarding attorneys fees to appellee as there was no evidence presented as to whether appellee's attorneys fees were reasonably incurred or resulted from appellant's alleged frivolous conduct.
Because the trial judge has observed the proceedings and is most familiar with the parties, their counsel, and the basis for their actions, a court's finding of frivolous conduct is entitled to substantial deference upon review. Ceol v. Zion Indus. Inc. (1992),81 Ohio App.3d 286, 289. However, an appellate court is vested with the authority to conduct a de novo review to determine whether "a pleading or argument is warranted under existing law or can be supported by a good faith argument for an extension, modification, or reversal of existing law." Maines Paper Food Service-Midwest, Inc. v. Regal Foods, Inc. (1995), 100 Ohio App.3d 454, 460, quoting Passmore v. Greene Cty. Bd. ofElections (1991), 74 Ohio App.3d 707, 712.
In its April 7, 2000 entry the trial court found appellant's counsel guilty of four counts of frivolous conduct under R.C. 2323.51. Although the trial court found appellant's counsel guilty of four counts of frivolous conduct, it only awarded appellee attorneys fees for the frivolous filing relating to the emergency motion for unsupervised visitation.
A thorough review of the record shows that the trial court did not err in finding that appellant's counsel had committed frivolous conduct under R.C. 2323.51. First, as to the filing of the motion for contempt against appellee for denying appellant phone access to the child, the trial court did not err in determining that this motion qualified as frivolous conduct. There was no legal basis for this contempt motion. A party cannot be held in contempt of court for failing to do something that they were not under court order to do. Appellant failed to direct the court's attention to any valid court order whereby appellant was entitled to certain terms and conditions regarding phone access. In addition, appellant also failed to prove that appellee had in fact denied him phone access to his son.
Next, the trial court found appellant's counsel guilty of frivolous conduct for the filing of a motion to have the trial court recuse itself and for the filing of the third affidavit of disqualification against the trial judge with the Ohio Supreme Court. This finding of frivolous conduct was also supported by the record. The filing of this third affidavit of disqualification and the motion for the trial court to recuse itself were simply refilings of previous arguments and added no substantially new legal or factual arguments.
Next, appellant was found guilty of frivolous conduct for the January 22, 1999 filing of a motion for emergency unsupervised visitation. This was the very issue (unsupervised visitation) which was pending before the court for ultimate determination. Again, as noted by the trial court, appellant's filing of this motion was simply a refiling of previous arguments and added no substantially new legal or factual arguments. Although appellant argues in the motion that he had wrongfully been denied visitation by appellee, appellant provided no evidence showing that appellee had violated the court's visitation order.
Finally, the trial court did not err in finding appellant's counsel guilty of frivolous conduct for the filing of the motion for a change of venue. Given the fact that the Ohio Supreme Court had denied appellant's motion to have him disqualified on three separate occasions, the trial court also found this to be a frivolous filing.
In Winkle v. Southdown, Inc. (Sept. 3, 1993), Greene App. No. 92-CA-107, unreported, 1993 WL 33643, the court of appeals discussed the relationship between allegations of bias against the trial judge and a motion for change of venue stemming from allegations that the party cannot receive a fair trial due to judicial bias:
 "To the extent that Winkle believed Judge Reid was biased, Winkle's exclusive remedy lay in filing an affidavit of bias and prejudice with the Chief Justice of the Ohio Supreme Court. State, ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463. * * *
"* * *
 "Winkle appears to confuse the issue of the trial judge's bias and prejudice with the issue of a change of venue. When a party cannot receive a fair trial in the original venue, it is common for the original trial judge to follow the cause of action into the new venue in which the case is transferred * * *." Id. at *6-7.
As in Winkle, because appellant's sole reason for filing for a change of venue was due to the alleged bias on the part of the trial judge, appellant's exclusive remedy from this matter was to file an affidavit of disqualification pursuant to R.C. 2701.03. Having already filed the affidavits of disqualification, there was no legal basis for filing the motion for a change of venue.
Once a court has determined that frivolous conduct has occurred, it must make an additional factual determination that the moving party has been adversely affected by such conduct before determining whether an award of attorneys fees is appropriate. An appellate court's review of attorneys fees awarded pursuant to R.C. 2323.51 involves a determination of whether the trial court abused its discretion. Estep v. Kasparian
(1992), 79 Ohio App.3d 313, 316.
The trial court awarded appellee a total of $765.00 in attorney fees for the frivolous filing of the motion for emergency unsupervised visitation. In his appellate brief, appellant argues that the trial court improperly awarded attorney fees because there was no evidence presented as to whether appellee's fees were "reasonably incurred" by appellee or necessitated by the frivolous conduct alleged.
Concerning the issue of attorney fees, the trial court stated:
 "[A] hearing was provided the Plaintiff to present evidence in accordance with Section 2323.51(B)(2)(a) of the Ohio Revised Code. Plaintiff's Counsel submitted an exhibit listing attorney fees and costs that were incurred and also testified in this regard. Counsel for the Defendant did not dispute the reasonableness of the hourly rate or that the time spent with respect to those matters itemized on the application for fees to have actually been performed by Counsel. However, Counsel for the Defendant did object to the acts of Counsel being considered frivolous or that the total amount sought is entitled to be paid."
The trial court's statement in this regard is supported by the record. During the hearing on the issue of attorney fees, the following colloquy took place:
 "MR. DRAGELVICH [counsel for defendant-appellant]: Your Honor, we are not going to contest the hourly rate that counsel charges, nor are we going to contest that on the paper that we have- it's not been marked, but it's attorney's fees and costs incurred.
 "THE COURT: Just so you'll know, we're going to — I've got all the exhibits out in the anteroom. We're going to see what the last plaintiff's exhibit was and give this the following number.
 "MR. DRAGELVICH: We are not going to contest what he has listed as time involved in a certain matter he spent on a certain matter. We're not disputing his judgment whatsoever; however, the only thing we say is: If he had to do this, we dispute that this was caused by anything related to Mr. Tandon or his counsel.
 "THE COURT: Well, I want to review this because I think there are some things that I might be taking out of here, just at a quick glance.
 "MR. MANN [counsel for plaintiff-appellee]: And I'm willing to testify, Your Honor, if you have any questions for me regarding the time on here —
 "THE COURT: I'll leave it up to if you want to testify or not.
 "MR. MANN: If they are stipulating, I don't think I need to; if they're not, I'm more than willing to get up there and . . .
 "THE COURT: Well, the stipulation, I think, is limited to the statement that Mr. Dragelvich just made: One, that the hourly rate is reasonable; two, that if you say you put in this amount of time for each of the items on here, he's not disputing you did put in that time; No. 3, though, he is not saying that all of this time was caused by anything that Mr. Tandon did."
Is that correct a correct assessment?
"MR. DRAGELVICH: That's correct." Tr. 41-42
Contrary to appellant's argument, there was evidence presented that appellee's fees were "reasonably incurred" by appellee and necessitated by the frivolous conduct alleged. Appellee's counsel took the stand and testified accordingly.
Furthermore, as we noted earlier, appellant's motion for emergency unsupervised visitation raised the very issue (unsupervised visitation) which was pending before the trial court for ultimate determination. Appellant's filing of this motion was simply a refiling of previous arguments and added no substantially new legal or factual arguments.
For the forgoing reasons, appellant's fourth assignment of error is without merit.
Based upon the foregoing, the judgment of the trial court is hereby affirmed.[5]
 ____________ DONOFRIO, J.
HON. GENE DONOFRIO, HON. JOSEPH J. VUKOVICH, and HON. MARY DEGENARO.
[1] Appellant and counsel were provided with adequate notice of the contempt motions. On May 15, 1999, appellee filed a motion to hold appellant and his attorney in contempt of court, and served the motion upon appellant's attorney. In response to this motion, on May 26, 1999, appellant filed a brief in opposition to appellee's contempt motion. In the instant case, it is also undisputed that appellant had actual notice of the motion for contempt. In fact, a review of the June 10, 1999 hearing at which the trial court began to hear evidence on appellee's motion for contempt shows that appellant was present at that hearing and received notice that the trial court would hold additional proceedings on the contempt motion. Appellant made no reference or allegations as to improper service during these hearings. Clearly, appellant's actual notice of the motion for contempt qualified as valid notice under R.C.2705.03. See Rose v. Rose (Mar. 31, 1997), Franklin App. No. 96APF09-1150, unreported, 1997 WL 142718.
[2] Although Attorney McKenna offered to execute the releases at the June 10, 1999 contempt hearing, he did not provide the court with the ordered releases prior to the hearing, and as such, Attorney McKenna's act of contempt was not purged.
[3] On June 21, 1999, this court denied appellant's request for a stay.
[4] The trial court also took evidence and heard testimony on appellee's contempt motion in a hearing April 6, 2000.
[5] In addition, any pending motions raised by the parties are hereby overruled.